RICHARDSON AND WIFE VS. WELLS, Administrator of PRUITT — Appeal from Anderson County.

All defensive pleading under our system is styled "the answer," and there is no impropriety in introducing any plea, whatever may be its character, with the formal words "by way of answer," etc.

It is no objection to a plea to the jurisdiction of the court that it was put in by attorney, and not by the defendant *in propria persona*.

Under our statute, a suit against an executor or administrator must be brought in the county in which the estate is administered. If this rule can be departed from at all, it can only be in those extreme cases where it may become necessary to prevent an absconding administrator from abducting the property of the estate.

This suit was brought in the county of Anderson by the appellants, Richardson and wife, for the recovery of a number of negro slaves, alleged to be the property of the wife. The petition, after setting out the claim of the appellants, and a description of the slaves, avers "that the said Susannah (the wife) has been most wrongfully and illegally deprived of the said

slaves, and that they are now illegally detained from her by one Samuel Wells, of the county of Anderson in said state, who pretends to claim each of the said above described negro slaves as the property of the succession of one Jacob Pruitt, whose administrator he, the said Samuel, is." The petition further charges, " that the said Jacob Pruitt in his lifetime, and the said Samuel at all times since the death of the said Jacob, though well convinced that the said negro slaves were the property of the said Susannah, have fraudulently and violently detained the said negro slaves," etc.; and "that the said Jacob in his lifetime, and the said Samuel, his administrator, have failed and refused, and do still fail and refuse, to restore the said negroes to your petitioners," etc. The petition prays for citation against " the said Samuel Wells," for a sequestration, and for judgment, etc.

The process directed the sheriff to summon Samuel G. Wells, administrator of the estate of Jacob Pruitt, deceased, to appear and answer the petition.

At the first term of the court after the suit was brought, a plea was filed in the following words: " And the said defendant, by his attorneys, comes, and for answer to said petition and writ, excepts to the jurisdiction of this court, because he says that he was, by the probate court of Houston county, in said state, duly appointed administrator of his intestate, which appointment he now holds; and he files herewith his letters of administration, marked A, as a part of this plea. Wherefore he says, that if liable to be sued at all, said suit should have been brought in the district court of said Houston county, and this he is ready to verify, and prays judgment, etc. (Signed) Yoakum & Reeves."

The defendant also demurred, setting forth various grounds of exception to the petition; and pleaded several other pleas to the merits of the action. There was also a motion to quash the writ of sequestration

After the filing the foregoing pleas, the plaintiffs, at the same term, obtained the leave of the court to amend, and amended their petition, by alleging " that said slaves were found at and before the commencement of this suit, and still are in the county

of Anderson;" and by striking out of the original petition the following words: "that the said Jacob Pruitt, in his lifetime, and the said Samuel at all times since the death of the said Jacob, though well convinced that the said negro slaves were the property of the said Susannah, have fraudulently and violently detained the said negro slaves," etc.; and also the words, "that the said Jacob in his lifetime, and the said Samuel, his administrator, have failed and refused, and do still fail and refuse, to restore the said negroes to your petitioners," etc.; and by inserting in lieu of the words thus stricken out, the words, "that the said defendant Samuel Wells has thus wrongfully and illegally detained said slaves from the said Susannah for about four years, and still continues to do so, although she has during all that time been, and still is, the separate owner of the same, and entitled to the possession," etc. The amended petition also prays, in addition to the former prayer, "that said defendant, Samuel Wells, may be decreed to pay" the alleged damages, etc. This amendment was sworn to by Thomas Richardson, one of the appellants, and was excepted to by the defendant "because it dismisses the suit against the estate of Jacob Pruitt, deceased, and sets up a new suit against Samuel G. Wells."

Upon the trial of the plea to the jurisdiction of the court, it was admitted by the parties "that at the time letters of administration were granted to Wells by the probate court of Houston county, Anderson county formed part of Houston, and that Wells resided in what was then Houston, now Anderson county; that the intestate resided at the time of his death in what is yet Houston county, and that Wells also resided and still resides in what is now Anderson, then Houston county." "That the administration of the estate of said Pruitt was granted in Houston county, has continued there, and is still in the county court of Houston county." "That the property sued for is in the territory of Anderson, formerly Houston county." "That the family of the intestate, after his death, removed to and still reside in the territory of Anderson, formerly Houston county, and were so residents before and at the time of

bringing this suit; that the slaves sued for were in Anderson county at and before the commencement of this suit, and are now in the custody of the sheriff of Anderson county."

The court disallowed the amendment to the petition, sustained the plea to the jurisdiction, and dismissed the cause. The plaintiffs excepted and appealed.

It appears from the record that a rule had been entered against the plaintiffs for security for costs, which rule had not been complied with when the cause was disposed of on the plea to the jurisdiction of the court.

JENNINGS and HYDE for appellants contended:

1st. That the court erred in disposing of the cause pending a rule for security for costs; and

2d. That it erred in sustaining the defendant's so called plea to the jurisdiction and dismissing the suit. Upon the second point they urged, 1st. That it was not a plea to the jurisdiction, inasmuch as in its terms it purports to answer the petition, and thereby admits the jurisdiction of the court.

2d. It is pleaded by attorney, and thereby also admits the jurisdiction. [1 Chitty's Pl. marg. p. 479; 2 Saund. 2096.]

3d. The matter stated in the plea constitutes no just exception to the jurisdiction of the district court of Anderson county, because the suit is not against Wells in any representative capacity. It charges him personally with tortious possession of certain slaves belonging to plaintiffs, and calls upon him personally to answer. The prayer is for a decree against him individually, for the restoration of the slaves, and damages. It seeks nothing from the succession of Pruitt, and, upon the allegations in the petition, no recovery could be had against him as the administrator of Pruitt.

4th. But if it be deemed that Wells is sued as administrator of Pruitt, it is insisted that under the 8th exception in the first section of the act of 1846, " to regulate proceedings in the district courts," the plaintiffs had a right to sue him, as such, in Anderson county.

YOAKUM for appellee. No brief filed.

HEMPHILL, Chief Justice, delivered the opinion of the court.

The appellants contend that the court erred,

1st. In disposing of the case against their consent during the pendency of a rule for security for costs; and

2d. In sustaining defendant's plea to the jurisdiction, and dismissing the suit.

The first ground of alleged error is altogether untenable, unless the giving security for costs be regarded as a privilege, and not a burthen upon a party. The plaintiffs were not compelled to give the required security before the next term of the court, and if the cause be in the meantime determined, they would be altogether exonerated from the charge; and although this exoneration might operate, perhaps, injuriously to the officers of the court, and to the defendant, it could not be the occasion of wrong or grievance to the plaintiffs, and can, consequently, afford them no just ground of complaint.

In sustaining the plea to the jurisdiction, it is contended that there was error on the grounds,

1st. Because the plea was not in fact to the jurisdiction, and in its terms it purported to answer the petition.

2d. It was pleaded by attorney, and thereby also admitted the jurisdiction of the court.

3d. The defendant was not charged as administrator of the estate of Jacob Pruitt, deceased, but the proceeding was against him in his individual capacity; and

4th. That the action was maintainable against the defendant, in his representative capacity, in the county of Anderson.

The first ground was not relied upon, and it is only necessary to state that the whole of the defensive pleading in our practice is styled "the answer;" and there is no impropriety in introducing any plea, whether in abatement or in bar, in law or fact, with the formal words "by way of answer," etc.

Nor can the objection that the plea was put in by attorneys, and not by the defendant *in propria persona,* be sustained. The rule that exceptions to the jurisdiction must be taken in person, and not by attorney, was founded upon the train of reasoning that an attorney, being an officer of the court, a plea

put in by him must be supposed to be by leave of the court first had, and this leave acknowledged the jurisdiction of the court. This seems a far-fetched deduction, and would doubtless be rejected in the English common law courts were it not sustained in their practice by the authority of precedents. We have been referred to no cases showing the practice in courts of equity as to this requisite of pleas to the jurisdiction, and in the cursory examination which has been given to treatises on the subject of chancery pleadings, no such rule has been observed, nor is it believed to exist.

In the common law courts, a distinction is taken between pleas of privilege and those to the jurisdiction. The former may be pleaded by attorney, but the latter only *in propria persona.* As, for instance, a plea alleging that the defendant is an attorney of another court, and privileged to be sued there, need not be pleaded personally, but may be pleaded by attorney. This was determined in the case of Hunter *vs.* Neck [3 Manning & Granger, 181; 42 Com. Law R. 102]. In that case a disposition was evinced to relax the rule as far as consistent with former precedents, which were shown to be both ways, and a decision either way would havé had the sanction of former authority. It is unprofitable, however, to pursue the inquiry into the doctrines on this subject, as held in the practice of the common law courts. They are inapplicable to such pleas under our system of practice. The defendant is, in this state, privileged to be sued at his domicile generally, and specially at other localities, in some specified cases. The benefit of these judicious provisions would be, in a great measure, defeated, if the privileges guarantied by them could not be pleaded by attorney, and defendants would be under the necessity of repairing to distant counties to plead them in person.

There can be no doubt that, under our laws, any matter which can be pleaded in civil suits may be alleged either personally or by attorney. Had there been any doubt of the right of appearing by attorney, it would, most probably, have been the subject of special legislation, as has been the right of parties to appear personally and prosecute and defend their suits.

[Vol. 1, Laws of Leg. p. 26; see Bacon's Abr. vol. 1; Abatement, 2; vol. 6, Pleas and Pleadings; 2 Saunders, 209 (b); Chitty, 476, 479.]

The next objection to the dismissal of the suit is, that the matter stated in the plea constitutes no just exception to the jurisdiction of the district court of Anderson county, as the suit was against Wells, the appellee, in his individual capacity. The terms employed are, perhaps, not the most appropriate to charge the defendant in the capacity of administrator, but this was evidently the intention of the pleader, and is the effect of his allegations, taken as a whole, and construed together. He alleges, positively, that the defendant is the administrator of the deceased intestate, and that, as such, he pretends to claim the slaves sued for; and after this positive averment that the defendant is administrator of the deceased, he charges that the latter, in his lifetime, and the said Samuel at all times since his death, have fraudulently detained the said negro slaves; and further avers that the intestate, in his lifetime, and the said Samuel, his administrator, have refused, and do refuse, to restore the property to the petitioners. The substance of these averments is that the tort of the administrator is but a continuation of the conversion of the property by the intestate, and that it is committed by defendant in his capacity as administrator, and they cannot be regarded as words of mere description, and rejected as surplusage. [2 Bailey, 175, 192.]

The fourth ground of error is, that the administrator was liable, under the 8th exception of the first section of the act to regulate proceedings in the district courts, to suit in the county of Anderson, as in that the property was found, and the defendant resided. [Laws of Leg. 1 vol. p. 364]. Whether the administrator be liable, generally, in that capacity, for a tort committed to property by his intestate, is a question not involved in the discussion, and upon which no opinion is necessary. His liability, as such, seems to have been taken as admitted, provided suit had been instituted in the county where the estate is administered; and on this supposition we proceed to examine whether he could be sued in any other county than

the one in which the administration is conducted. The question of locality of actions, in this state, is regulated, by statute, and is founded on a different principle from that which lies at the foundation of their locality, whether real or fictitious, at common law. The place in which the cause of action arises is that where, by the common law, the suit must be instituted; and this for the reason, originally, that the jury, who were to determine the cause, and that, principally, from their own private knowledge, and to decide it rightly under the penalty of attaint, must be drawn from the *vicinetum*, or immediate neighborhood of where the material facts happened. And that the juries might be drawn from the proper neighborhood, the parties were required to state in their pleadings not merely the county, but the hundred or vill, in which the facts occurred. This reason for the selection of juries, viz.: their personal acquaintance with the parties and the merits of the cause, has long since ceased to operate, and would be considered now as evidence rather of their unfitness. But the rules of pleading were not changed with the subversion of the principle on which they were founded, and in actions now regarded as transitory, the cause must be alleged, whether factitiously or otherwise, to have occurred in the county where the suit is commenced; and this because such averment was once necessary to point out the visne or neighborhood from which a jury, acquainted with all the facts, might be summoned. [*Vide* Mostyn *vs.* Fabrigas, Cowper, 161; Smith's Leading Cases, vol. 1, p. 340; 1 Chitty's Pl. 297.] This fictitious allegation of place has crept into some petitions, even under our practice, notwithstanding that the principle which determined the locality of actions at common law has never been recognized in this state, and our doctrines on that subject were derived principally from the jurisprudence of Spain, which was the common law of the land at the time of the passage of the statute organizing the district courts under the republic, and which specified the various places at which suits may be instituted. The provisions of this statute have been adopted, substantially, in the act regulating proceedings in the district courts of the

state. The ruling principle for the locality of actions in this state, derived through the Spanish system, from the civil law, is, that the *actor sequitur forum rei*, or that the defendant must be sued in his own forum, viz.: before the judge who has jurisdiction over the territory in which the domicile of the defendant is situated. This rule was regarded by commentators on our former laws as eminently salutary and just. It was supposed that considerations of policy and the dictates of reason demanded that man, as a member of society, should be tried by the judge of the territory in which he lived and had his daily transactions; and that nothing could be more absurd than that he should be dragged from his own domicile, his own fireside, the home of his family, and the centre of his affairs, and subjected to a suit instituted with or without good grounds against him, in other, and perhaps distant sections of the country. [Peña y Peña, 3 vol. pp. 164, 200.]

There were exceptions, however, to this general rule; and one of them was, that tutors, curators, and those charged with the administration of property, should account in the place and before the judge who had conferred the trusts; and that this would not be eluded by privileges derived from the eccle-siastical, military, or other special jurisdictions. [Peña y Peña, 2 vol. p. 167.]

In Louisiana, a similar exception is made to the same general rule, and, under our laws, the same exception assumes the form of an imperative order, that suits must be brought against executors and administrators in the counties in which estates are administered. [1 vol. Laws.]

The appellant's counsel, in a very ingenious argument, contended that, as the rule establishing the defendant's domicile as the general locality for the institution of suits was for the benefit of the defendant, all the exceptions were intended to afford some advantage to the plaintiff; and that he had a right to use any of them which would cover his case, and secure him from the operation of a hard general rule.

The position is plausible, and is, to a great extent, well founded; but some of the exceptions seem to be grounded on

reasons of policy, or some general principle, which is inde-pendent of the convenience of either of the parties to the suit.

The first exception, authorizing married women to be sued at the domicile of their husbands, affords no special advantage to plaintiffs. The domicile of the wife is always that of the husband, and the exception, so far from being advantageous to plaintiffs, seems intended to be a more strict enforcement of the general rule; and to take the case, not generally, at least, out of the rule, but out of the operation of some of its exceptions. Whatever may be the extent or true construction of the first exception, it seems incapable of affording any ad-vantage to the plaintiff which could not be obtained under the general rule.

The last exception, requiring suits to be instituted for lands where the same, or a part thereof, may be situated, operates irrespective of the convenience of either party. Into the reason of the provision it is not material now to inquire. Whether it be founded on a principle of our former law, that rights of property should be adjudicated by the *forum rei sitæ*, or is borrowed from the common law doctrines of locality, might be matter of speculative curiosity; but whatever may be the origin or reason of this mandatory provision, it is apparent that the convenience of the plaintiff was specially consulted in its adoption. The position is not entirely sound, then, that all of the exceptions were intended to operate some advantage to the plaintiff, and that consequently he may avail himself of any of them, under the peculiar circumstances of his case.

The fifth exception, requiring executors, administrators, etc., to be sued in the counties where the estates are administered, was the ground upon which the suit was dismissed; and were the position taken by the counsel fully admitted, the judgment would be clearly erroneous, as the case would then be controlled by the provision of the eighth exception in the statute. But the fifth exception seems more plainly than do the others we have examined, to be founded on reasons altogether extraneous to the personal privileges or convenience of the parties litigat-ing in court. The estate, in contemplation of law, is regarded

as an entity having its location or domicile in a particular county; and on that fictitious being is conferred the right of being sued at its locality, without regard to the privilege of the domicile of the administrator on the one hand, or of other localities in favor of the plaintiff on the other. All the property of the estate, wherever situated, is by force of law, for administrative purposes, drawn within the county where the estate is in the course of administration, and the privileges of claimants to sue, or of its administrators to defend elsewhere, are disregarded. Under the former system, no exemptions, on account of the privileges of special jurisdictions, were allowed to preclude the jurisdiction of the court which had granted administration.

These doctrines would be more fully applicable if administration were granted by the district court; though, in effect, they prevail in our own system by permitting such suits against estates as are not cognizable in the probate courts to be brought only in the district court of the county in which the succession is opened. Were it necessary, many good reasons might be given why the affairs and interests of an estate, while in the hands of an administrator, or agent, should be conducted and determined before a single court, or in the courts of a particular county. In the case of Owen *vs.* Neill, decided at this term, some of these reasons were set forth, and it was stated, as one of them, that the probate court, before which a full return of administration is required, would be the better enabled to understand the good faith with which the trust had been discharged. The administrator is but an agent for the management of property belonging to others, and if this agency be conducted in one place, its condition can be easily ascertained by persons interested in its affairs. The vouchers, documents and evidence necessary to support the rights of the estate, or to prove the fidelity of the administrator, are of easy access, and can be procured without expense or trouble.

But were the *forum* of the domicile, or of other localities, to exclude that granting administration of the estate, the affairs of the succession might be scattered over several counties, and

confusion, increased expenses, and opportunities for fraudulent mismanagement and collusion with claimants, would be the inevitable consequence.

The provision is, certainly, most wise and judicious, and operates less hardship, and subserves more fully the purposes of the trust, than any other which could be established.

Its terms are those of command, and although cases might, possibly, be imagined, where the rule might be relaxed for the benefit of claimants, and to prevent property from being abducted beyond the limits of the state by an absconding administrator, yet the case under review is not such as would justify a different locality for the action from that required in the provision.

The facts do not show such a case of danger as might, perhaps, dispense with the rule for the preservation of rights which would otherwise be altogether lost. The defendant was not flying the country or removing the property to foreign parts, and there was, therefore, no pressing emergency to be urged as a foundation for the change of the statutory venue of the action. The rule is not to be slightly departed from, if at all, and certainly not under the circumstances presented in this case.

It was not necessary, to maintain the plaintiffs' alleged rights to this property, to have charged a conversion or detention in the lifetime of the intestate. Whether the suit could be maintained, at all, against the defendant in his representative capacity, might be questioned; but, however that may be, it could have been sustained against the defendant individually, and the case would then have steered clear of the injurious operation of the statutory provision. The plaintiffs, in the prosecution of their rights, were not compelled either to submit or run counter to the provisions of the fifth exception, and the case could not, therefore, in any possible aspect, present such merits as would authorize a departure from the emphatic provision of the statute. There is no error in the judgment, and it is ordered that the same be affirmed.