

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00164-CR

---

The State of Texas, Appellant

v.

Jose Antonio Torrelles, Appellee

---

On Appeal from the County Court at Law No. 7
El Paso County, Texas
Trial Court No. 20240C03827

---

## CONCURRING OPINION REGARDING SANCTIONS

I agree with the per curiam opinion but write separately to elaborate on my decision not to impose sanctions against the District Attorney's Office and individual prosecutors. Aside from requesting sanctions in the form of dismissing his indictment and granting his attorney's fees, which the per curiam opinion addresses, Torrelles requests "all other sanctions that this Court deems just and appropriate to deter [the State's] behavior in the future." According to Torrelles, the State and certain prosecutors acted in bad faith at the trial court level with respect to the record issues, and in this Court by allegedly making misrepresentations in their briefing. While I believe

the Court's inherent authority to sanction attorneys in egregious circumstances includes the authority to sanction prosecutors, in this instance I do not believe the circumstances warrant it.

To maintain the integrity of the judicial system, the courts have a duty to hold even "executive-branch lawyer[s] to account for litigation conduct" after the State makes a "determination[] about the propriety of filing suit" and populates the suit with "representations that give it force." *Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 496–97 (Tex. 2024) *see also State v. Gabaldon*, No. PD-0149-23, 2025 WL 2588858, at *26 (Tex. Crim. App. Sept. 3, 2025), *reh'g denied* (Nov. 6, 2025) (Schenck, P.J., concurring) ("The majority opinion notes that the trial court remains free to fashion other remedies to vindicate the rights of the accused and the court itself[]" leaving "the court free to fashion *any* remedy, short of dismissal with prejudice.");[1] *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that a court has the inherent power to impose sanctions in order to aid in the administration of justice and in the preservation of its integrity).

If the court overseeing litigation conduct "perceives . . . sanctionable conduct, the court is empowered to investigate and impose consequences" without having to "await the opposing party's call"—this is the court's inherent authority. *Webster*, 704 S.W.3d at 505 (citing *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 723 n.76 (Tex. 2020)). In this context, the court has

---

[1] As Presiding Justice Schenck has stated:

> The suggestion that courts might lack the power to hold rogue prosecutors accountable directly conflicts with the constitutionally-implied powers the courts must possess, at least in the civil context. *See Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 489–90 (Tex. 2024). Given the gravity of circumstances involved in criminal proceedings and the bifurcated nature of the Texas high courts, I doubt this implied power could simply disappear because this Court has not yet chosen to employ it.

*State v. Gabaldon*, No. PD-0149-23, 2025 WL 2588858, at *22 n.20 (Tex. Crim. App. Sept. 3, 2025), *reh'g denied* (Nov. 6, 2025) (Schenck, P.J., concurring).

the inherent authority to impose sanctions against an attorney, public or private as an officer of the court, for "a bad faith abuse of the judicial process, even when the specific conduct is not covered by a rule or statute." *Darnell v. Broberg*, 565 S.W.3d 450, 459–60 (Tex. App.—El Paso 2018, no pet.) (citing *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (holding that courts possess inherent power to discipline an attorney's behavior)); *see also Brewer*, 601 S.W.3d at 716 (recognizing court's inherent authority to impose sanctions when there is evidence of "bad faith"); *Webster*, 704 S.W.3d at 491 (citing *State v. Johnson*, 12 Tex. 231, 238 (1854) ("The District Attorney is not only an officer of the State, but also, *in common with other attorneys, an officer of the Court.*" (emphasis added)); *Richardson v. Wells*, 3 Tex. 223, 227–28 (1848) (observing that "an attorney" is "an officer of the court")).

Recognizing our inherent authority to address Torrelles's claims, and after carefully considering his allegations of bad faith conduct during the litigation process, I conclude that the record does not support a finding that the District Attorney's Office and the individual prosecutors' actions in this case warrant the imposition of sanctions.

**An attorney's conduct must be egregious to warrant sanctions**

In general, "courts presume that pleadings and other papers are filed in good faith." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993)). We only grant sanctions "in truly egregious circumstances." *Shah v. Maple Energy Holdings, LLC*, No. 08-22-00198-CV, 2023 WL 4879905, at *17–18 (Tex. App.—El Paso July 31, 2023), *supplemented*, 676 S.W.3d 820 (Tex. App.—El Paso 2023, pet. denied); *see also Powell v. Fletcher*, 695 S.W.3d 675, 681 (Tex. App.—Houston [1st Dist.] 2024, pet. denied), (court will "impose sanctions only under circumstances we find truly egregious"); *Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 290 (Tex. App.—Dallas 2012, no pet.) (recognizing same). Nor do

we impose sanctions in situations simply because we disagree with a party's legal arguments or position. *See, e.g.*, *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 900–01 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In short, "[s]anctions should only be assessed 'in those egregious situations where the worst of the bar uses our honored system for ill motive without regard to reason and the guiding principles of the law.'" *Thielemann v. Kethan*, 371 S.W.3d 286, 295 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (quoting *Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 951 (Tex. App.—Houston [1st Dist.] 1993, no writ)); *see also Mobley v. Mobley*, 506 S.W.3d 87, 94 (Tex. App.—Texarkana 2016, no pet.) (recognizing that for purposes of imposing sanctions, "bad faith does not exist when a person exercises bad judgment or negligence," but instead "bad faith means the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes.") (internal quotation marks omitted).

**The State's conduct in the county court proceedings**

Torrelles contends the prosecutors' actions in the county court were undertaken in bad faith by (1) directing the county clerk's office to modify the court's file without judicial intervention and without notifying defense counsel, and (2) "impeding [defense counsel's] efforts" to ensure that an accurate record was transmitted to this Court on appeal. According to Torrelles, defense counsel attempted to contact the prosecutors involved at the county court level to discuss matters relating to the record, but the prosecutors failed or refused to respond. And, Torrelles states, defense counsel informed the prosecutors of their intent to file a bill of exception to address the record issue, but the prosecutors essentially ignored their communications. Torrelles finds it significant that the county court, in its post-abatement hearing order, found that the State's prosecutors did not act in "good faith" in both respects.

The State's point that Torrelles never sought sanctions in the county court for that alleged wrongdoing, and consequently, the county court did not make any findings that the State's conduct was sufficiently egregious to warrant sanctions is well taken. Nevertheless, even if we were to consider the prosecutors' conduct in the county court, I agree with the State that sanctions are not warranted. At the abatement hearing, the prosecutors testified that they believed the failure to include the true-bill list as an attachment to the district court's order was a clerical error that could be corrected through the clerk's office without judicial intervention. The State also explained that the prosecutors did not cooperate with defense counsel's efforts to address the record issues in the county court, as they had already filed their notice of appeal and believed the county court lacked jurisdiction to address the matter.

Regardless of the viability of the State's legal arguments, given the prosecutors' explanations in the record, I do not find their actions so egregious or in bad faith such that sanctions would be warranted. *See Shah*, 2023 WL 4879905, at *2 (recognizing that a court will "only grant sanctions "in truly egregious circumstances.") (citing *McCullough v. Scarbrough, Medlin, & Associates Inc.*, No. 08-12-00205-CV, 2012 WL 3100845, at *1 (Tex. App.—El Paso July 31, 2012, no pet.) (mem. op.)); *see also Brewer*, 601 S.W.3d 704, 716 (Tex. 2020) (recognizing that an attorney may be sanctioned for acting in bad faith, but an attorney's "error, without more, is no evidence of improper motive, unless the conduct could not have occurred without conscious wrongdoing").

**The State's conduct in seeking an emergency stay in this Court**

In a similar vein, Torrelles contends the State acted in bad faith in this Court when it filed an emergency motion to stay a July 22, 2024 county court hearing to address the record issue.

5

According to Torrelles, by filing the emergency motion, the State was again wrongfully impeding his efforts to ensure that a correct clerk's record was filed with this Court.[2]

I do not construe the State's conduct in seeking a stay as an act of bad faith. As the State notes, it had the right to appeal from the trial court's dismissal of an indictment and seek a stay of the trial court proceedings pending the disposition of the appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(1)(e). In its motion, the State asserted its belief that the county court lacked jurisdiction to address the record issues absent direction from this Court, given the filing of its notice of appeal. *See, e.g.*, *Ex parte Macias*, 541 S.W.3d 782, 786 (Tex. Crim. App. 2017) (holding that a "'trial court is deprived of jurisdiction over the case during the pendency of' a State's appeal and that jurisdiction resumes in the trial court only after "the appellate court's . . . mandate") (quoting *State v. Robinson*, 498 S.W.3d 914, 921 (Tex. Crim. App. 2016)).

Significantly, in resolving the motion, we agreed that the State had the right to a stay of the proceedings under these circumstances, and we granted the request without prejudice to either party's right to seek supplementation to "ensure a complete and accurate appellate record." Thereafter, when Torrelles asked us to abate the appeal to allow an inquiry into the record issue, the State did not oppose the request and ultimately participated in the hearing we ordered. Under these circumstances, I do not find that the State's action in requesting a stay was made in bad faith.

**Statements made in the State's pleadings in this Court**

Finally, Torrelles contends the District Attorney's Office and its prosecutors should be sanctioned for their various statements in the motion for a stay as well as in the briefs filed in this

---

[2] We note that the State only filed the stay motion in one of the 59 cases but informed this Court that it intended to file similar stay motions in the remaining 58 cases as well, including Torrelles's case. However, we granted the motion before the State had the chance to file the motions in the other 58 cases.

Court, which Torrelles contends were either inaccurate, misleading, or based on facts not before the Court in his case.

Torrelles first faults the appellate attorneys who drafted the State's initial brief for asserting that the clerk's record, as filed in this Court with the true-bill list included, was the "official . . . file in each of the 59 cases from day one, May 21, 2024," when in fact the evidence at the abatement hearing established otherwise. As the State points out, however, the attorneys who drafted the briefs were not involved in the lower court proceedings, and they could have reasonably believed the clerk's record accurately reflected what occurred in the county court, particularly since the defendants did not seek to correct the clerk's record until *after* the State filed its initial brief. In addition, following the abatement hearing, the State filed its amended brief clarifying the sequence of events with respect to the addition of the true-bill list in the county court's file as well as why it believed the true bill list was properly filed under the "filing-upon-receipt rule." I therefore do not find that the State's prosecutors' actions rose to the level of bad faith in this regard.

Torrelles also maintains that the State's initial brief improperly referred to the records in 81 other cases involving an alleged riot that occurred at the same time and to facts relevant to those other cases not in the appellate record in this case. I note, however, that the State's references were primarily for background information regarding the procedural posture of the case, and much of the information was provided in our recent opinions in those cases. *See, e.g.*, *State v. Barrera*, 722 S.W.3d 894 (Tex. App.—El Paso 2025, pet. filed). Moreover, in its amended brief, the State omitted most, if not all, of the references to the records in the 81 cases that were not part of the appellate record in Torrelles's case. I therefore do not find the references to the other records so egregious as to warrant sanctions against the State or its prosecutors.

For the foregoing reasons, in addition to those expressed by the majority opinion, I decline to impose sanctions against the District Attorney's Office and its individual prosecutors.


LISA J. SOTO, Justice

February 18, 2026

Before Palafox, and Soto, JJ., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), (sitting by assignment)

Soto, J., filed a concurring opinion regarding sanctions,
in which Barajas, C.J., joined