Ophelia MARQUEZ, Appellant,

v.

PROVIDENCE MEMORIAL HOSPI-TAL, Tenet Healthcare Corporation, and Jacob Vigil, M.D., Appellees.

No. 08–00–00268–CV.

Court of Appeals of Texas, El Paso.

Sept. 27, 2001.

Rehearing Overruled Oct. 31, 2001.

Robert E. Hedicke, Victor F. Poulos, Law Offices of Victor F. Poulos, P.C., El Paso, for Appellant.

Karen L. Landinger, James A. Mounts, III, Ray, McChristian & Jeans, P.C., El Paso, Yvonne K. Puig, Akin, Gump, Stauss, Hauer & Feld, L.L.P., Austin, Cynthia S. Anderson, Kemp Smith, P.C., El Paso, for Appellees.

Before Panel No. 5 BARAJAS, C.J., McCLURE, and PRESLAR (Assigned), JJ.

## OPINION

McCLURE, Justice.

Ophelia Marquez appeals from an order dismissing her suit against Providence Memorial Hospital (Providence), Tenet Healthcare Corporation (Tenet), and Jacob Vigil, M.D. (Vigil) for failure to comply with the requirements of TEX.REV.CIV.STAT. ANN. art. 4590i, § 13.01(d) (Vernon Pamph. 1999). We affirm.

## FACTUAL SUMMARY

On July 17, 1996, Ophelia Marquez underwent laparoscopic cholecystectomy surgery performed by Dr. William Wade at Providence Memorial Hospital. In the two days following surgery, Marquez suffered from pain and nausea and she relayed those complaints to Dr. Wade in person and by telephone. She went to Providence's Emergency Department on July

19, 1996, complaining of bilateral shoulder pain. The Emergency Department physician, Dr. Jacob Vigil, ordered a chest x-ray and injection of a pain killer, and then released Marquez. On July 25, 1996, Marquez was admitted to Providence with pain and diabetic ketoacidosis. It was then discovered that she had suffered a complete transection of the hepatic duct during surgery with resulting peritonitis and septic shock. Marquez was stabilized and transferred to Houston for emergency surgery to repair the severed biliary duct.

On April 10, 1998, Marquez filed a medical malpractice suit against Dr. Wade. Following amendment of her petition on June 5, 1998, she timely filed an expert report by Palmer H. White, M.D., and *curriculum vitae*. Marquez filed a second amended petition on July 16, 1998, alleging causes of action against Providence, Tenet, and Dr. Vigil. In her claim against Providence, she alleged negligence for the hospital's failure to provide fluoroscopy during surgery, and additionally, negligence related to the post-surgical visit to the Emergency Department. Marquez did not file an expert report and C.V. pertaining to these additional defendants until February 3, 1999, which is 202 days after she filed the second amended petition. On that date, she filed the expert report and C.V. of T. Lawrence Huffman, M.D., which addressed the emergency room care provided by Providence. Providence and Tenet filed a motion to dismiss and for sanctions on June 14, 1999. In addition to her response to the motion to dismiss, Marquez filed an unverified motion for grace period on June 23, 1999. On July 1, 1999, the trial court conducted a hearing on the motion to dismiss. Near the conclusion of

the hearing, Marquez filed directly with the trial court an amended response and verified motion for grace period.[1] The trial court took the motion to dismiss under advisement. On July 9, 1999, Marquez filed an expert report of Helen M. Castillo, R.N. which addressed the failure of the Emergency Department nurse and physician to contact Dr. Wade when Marquez arrived at the ER on July 19, 1996.

On July 14, 1999, Dr. Vigil filed a motion to dismiss and for sanctions because Marquez had not timely filed an expert report pertaining specifically to the cause of action alleged against him. Marquez responded with a verified motion for grace period pursuant to Section 13.01(g). On July 27, Dr. Vigil also filed a motion to strike Nurse Castillo's report not only due to its untimeliness but also because it failed to state the standard of care applicable to him, failed to show how he violated the standard of care, and did not establish a causal connection between the alleged breach and the injury. The trial court conducted a hearing on those motions on August 31, 1999, and once again, took the issues under advisement for several months.

On April 28, 2000, the trial court found that Marquez had not timely filed her motion for grace period, dismissed her causes of action against Providence and Tenet, and awarded attorney's fees and court costs in a total amount of $17,622.80. In a separate order dated April 28, 2000, the trial court dismissed Marquez's suit against Dr. Vigil and awarded attorney's fees and costs totaling $26,207.77. These orders became final and appealable when the trial court severed them from the re-

---

1. Counsel for Marquez had not verified the response and motion prior to arrival at the courthouse on the hearing date, and it was only after the hearing had begun that counsel located a notary public. Near the conclusion

of the hearing, counsel for Marquez tendered the motion for filing and the trial court judge received it and wrote "filed 7/1/99 8:00 a.m." on the first page.

maining action against Dr. Wade. Marquez timely filed her notice of appeal.

## MEDICAL LIABILITY AND INSURANCE IMPROVEMENT ACT

In Issues One and Two, Marquez argues that the trial court abused its discretion in refusing to grant her request for a thirty-day grace period pursuant to Section 13.01(g).[2] Providence, Tenet, and Dr. Vigil maintain that the trial court acted properly in refusing to grant an extension of time since Marquez did not timely file a verified motion. Additionally, they argue that no abuse of discretion is shown in the trial court's refusal to grant additional time under Section 13.01(g) because Marquez did not establish that her failure to timely file the report was not intentional or the result of conscious indifference but was the result of an accident or mistake. We will address these arguments separately, and where necessary, we will distinguish between the Appellees.

### Relevant Provisions of the MLIIA

■ The Medical Liability and Insurance Improvement Act (MLIIA) was enacted by the Texas Legislature to curtail frivolous claims. *Hart v. Wright,* 16 S.W.3d 872, 876 (Tex.App.—Fort Worth 2000, pet. denied); *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 537 (Tex.App.—Texarkana 1998, no pet.). Section 13.01 requires a plaintiff to provide each defending physician or health care provider with one or more expert reports relating to

liability and causation. *Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.—San Antonio 1999, pet. denied); *see* Tex.Rev.Civ.Stat. Ann. art. 4590i, § 13.01(d). The expert report, along with a *curriculum vitae* of each expert, must be furnished to the defendant not later than the 180th day after the date on which a health care liability claim is filed or the last day of any extended period as permitted under the statute. Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(d). As referenced in subsection (d), the statute contains three distinct provisions by which the plaintiff may receive an extension of time. *See* Tex.Rev.Civ. Stat.Ann. art. 4590i, § 13.01(f), (g), (h). Pertinent to this case, subsection (g) provides:

(g) Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline established by Subsection (d) of this section and after hearing the court finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A motion by a claimant for relief under this subsection shall be considered timely if it is filed before any hearing on a motion by a defendant under Subsection (e) of this section.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(g).[3]

---

**2.** Providence, Tenet, and Dr. Vigil complain that Marquez's brief does not comply with Tex.R.App.P. 38.1(e) and (h) because it does not concisely state the issues for review, it does not distinguish the arguments applicable to Providence from those applicable to Dr. Vigil, and the arguments are multifarious and not clearly stated. While this is a fair criticism of the brief and the Court could exercise its discretion to strike it, we have been able to discern the issues raised and will address

them without the necessity of ordering them re-briefed.

**3.** Marquez did not seek an extension pursuant to subsection (f) which provides that: "The court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days. Only one extension may be granted under this subsection." Tex.Rev.Civ. Stat.Ann. art. 4590i, § 13.01(f). Likewise, the

If a plaintiff fails to comply with subsection (d) and the defendant files a motion seeking sanctions pursuant to Section 13.01(e), a trial court has no discretion and must enter an order dismissing the case with prejudice. TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(e)(3) (Vernon Supp.2001); *Hart,* 16 S.W.3d at 876.

### Standard of Review

We apply an abuse of discretion standard when reviewing a dismissal under Section 13.01(e)(3). *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873 (Tex.2001); *Hart,* 16 S.W.3d at 875; *Tibbetts v. Gagliardi,* 2 S.W.3d 659, 663 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). The same standard applies to review of the trial court's decision to deny a request for extension of time under Section 13.01(g). *See Estrello v. Elboar,* 965 S.W.2d 754, 758 (Tex.App.—Fort Worth 1998, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or, in other words, acts in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Pfeiffer v. Jacobs,* 29 S.W.3d 193, 196 (Tex.App.—Houston [14th Dist.] 2000, pet. denied). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *See Downer,* 701 S.W.2d at 241–42.

### Must the Plaintiff Verify the Section 13.01(g) Motion?

Providence, Tenet, and Dr. Vigil maintain that the motion filed on June 23, 1999 could not be considered by the trial court because it had not been verified. Since Marquez did not file a verified motion until after commencement of the July 1 hearing on the motion to dismiss, they argue that it is not timely, and therefore, the trial court did not abuse its discretion in refusing to grant a grace period under Section 13.01(g). In the dismissal orders, the trial court specifically found that Marquez had not timely filed her motion pursuant to Section 13.01(g).

Several courts have held that since the test stated in Section 13.01(g) is obviously derived from TEX.R.CIV.P. 165a(3) and from the familiar standard governing equitable motions for new trial established in *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939),[4] the Legislature intended the elements of Section 13.01(g) to apply in an analogous manner. *See, e.g., Nguyen v. Kim,* 3 S.W.3d 146, 152 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Broom v. MacMaster,* 992 S.W.2d 659, 663 (Tex.App.—Dallas 1999, no pet.); *McClure v. Landis,* 959 S.W.2d 679, 681 (Tex.App.—Austin 1997, pet. denied). Thus, these cases and others have looked to the case law under Rule 165a(3) and *Craddock* when examining the meaning of and relationship of the terms "intentional," "conscious indifference," "mistake," and "accident" as used in Section 13.01(g). *See Nguyen,* 3 S.W.3d at 152; *Broom,* 992 S.W.2d at 663; *McClure,* 959 S.W.2d at 681. No case, however, has directly ad-

---

parties did not enter into an agreement to extend the time to file an expert report and the C.V. as provided for by TEX.REV.CIV.STAT. ANN. art. 4590i, § 13.01(h).

**4.** In order to set a default judgment, the motion for new trial must (1) show that the failure to appear was not intentional, (2) set up a meritorious defense, and (3) show that the motion for new trial was filed at a time when granting it would not harm the plaintiff. *Craddock,* 133 S.W.2d at 126.

dressed the question whether the procedural requirements of *Craddock* and Rule 165a(3) should also apply to a motion filed pursuant to Section 13.01(g).[5]

▓▓▓▓ Providence and Tenet are correct that *Craddock* and subsequent decisions require a sworn motion for new trial or a motion supported by affidavits. *See Craddock*, 133 S.W.2d at 125–26; *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex.1966) (explaining *Craddock*'s requirement that the motion set up meritorious defense; stating that the motion must allege facts which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other *prima facie* evidence to show the existence of a meritorious defense). The Supreme Court initially imposed this requirement in order to prevent cases from being reopened on the basis of fictitious or unmeritorious defenses. *See Ivy*, 407 S.W.2d at 214. The attached affidavits do not have to be offered into evidence in order to be considered by the trial court on any of the *Craddock* elements. *Director, State Employees Workers' Compensation Division v. Evans*, 889 S.W.2d 266, 268 (Tex.1994). It is sufficient that the affidavits are attached to the motion for new trial and are part of the record. *Id.* If the factual assertions of the movant's affidavits are not controverted, the trial court must accept them as true. *See Old Republic Insurance Company v. Scott*, 873 S.W.2d 381, 382 (Tex.1994). In such a case, the movant satisfies his burden if the affidavits set forth facts that, if true, establish the *Craddock* elements, including a showing that the failure to appear was not inten-

tional or the product of conscious indifference. *Id.; Strackbein v. Prewitt*, 671 S.W.2d 37, 38–39 (Tex.1984).

Rule 165a(3), which governs reinstatement of a case dismissed for want of prosecution, requires the movant to set forth the grounds for reinstatement in a verified motion. *See* TEX.R.CIV.P. 165a(3). Similar to the language used in Section 13.01(g), the trial court must reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained. *Id.*

Providence, Tenet, and Dr. Vigil seek to graft this verification requirement upon Section 13.01(g) even though such a requirement is not found in the statute. While it is logical to interpret the substantive elements of Section 13.01(g) so that they are consistent with Rule 165a(3) and *Craddock*, a motion for extension of time is procedurally distinct from a motion for new trial. In the latter case, judgment has already been granted in favor of the opponent, and thus, there are different policy considerations. As the Supreme Court discussed in *Ivy*, it imposed the burden on the defendant to attach affidavits or other evidence showing a meritorious defense so that cases would not be reopened needlessly. *See Ivy*, 407 S.W.2d at 214. Obviously, the verification requirement grows out of the strong policy concerns which favor finality of judgments. Those concerns are not present in the context of a Section 13.01(g) motion. Fur-

---

**5.** Two cases have spoken in terms of a Section 13.01(g) motion and affidavits but they did not address the question whether verification is required by the statute. *See Finley v. Steenkamp*, 19 S.W.3d 533, 538–39 (Tex. App.—Fort Worth 2000, no pet.); *McClure*, 959 S.W.2d at 681. It should be noted that in

*McClure*, the plaintiff filed a motion for new trial based on Section 13.01(g) and argued that she was entitled to a thirty-day grace period to retroactively validate the late-filed expert report. Thus, any discussion in *McClure* regarding the affidavits pertains to those filed as part of the motion for new trial.

ther, we find no evidence of an intent on the part of the Legislature to impose any of the procedural requirements contained in Rule 165a(3), including verification. If this had been the Legislature's intent, it could have easily included this requirement in the statute. Therefore, we hold that a motion under Section 13.01(g) need not be verified in order to be considered timely under the statute. It is by far the better practice, but it is not procedurally required.[6] Marquez' unverified motion for grace period filed on June 23, 1999 was timely,[7] and the trial court erred in concluding otherwise.

### Did Marquez Sustain Her Burden under Section 13.01(g)?

Marquez bore the burden of establishing that her failure to comply with the deadline for filing Dr. Huffman's expert report was not intentional or the result of conscious indifference but was the result of an accident or mistake. *See Schorp v. Baptist Memorial Health System,* 5 S.W.3d 727, 732 (Tex.App.—San Antonio 1999, no pet.) (stating that burden is on party seeking relief to show evidence of accident or mistake to demonstrate that he did not act intentionally or with conscious indifference). On appeal, Marquez contends that Dr. Huffman's expert report was received in her attorneys' office on November 10, 1998, but it was inadvertently placed in the office file by legal staff rather than being filed with the clerk and forwarded to opposing counsel. While there is evidence which partially supports this assertion, it is also directly contradicted by the testimony of counsel.

The expert report of Dr. Huffman is dated November 10, 1998, and it is addressed to Marquez's attorneys, Robert Hedicke and Victor Poulos. The report was not filed with the district clerk until February 3, 1999. In the motions for grace period, Marquez makes no mention of the alleged misfiling but instead alleges only the following:

> If the Court determines that the report of Dr. Huffman is inadequate, then Plaintiff would show that such inadequacy was not intentional nor the result of conscious indifference, but the result of an accident or mistake on the part of the Plaintiff's counsel and Plaintiff who believed that the report adequately covered the actions of the emergency room. On that basis, the Plaintiff would request that the Court grant the thirty day grace period contemplated by Section 13.01(g) of Article 4590i, Texas Revised Civil Statutes, to run from the conclusion of the hearing of this matter, to allow the Plaintiff sufficient time to file an amended report which adequately complies with the requirements of Section 13.01(r)(6).

---

6. Our holding should not be interpreted as encouraging the procedure utilized by the plaintiff in this case. We can conceive of at least one compelling reason why the Section 13.01(g) motion should be verified or otherwise supported by *prima facie* proof. In the event the trial court refuses to conduct a hearing on the unverified motion, it will be difficult, if not impossible, for the movant to show that the trial court abused its discretion or that the error probably caused the rendition of an improper judgment.

7. Even if the June 23 motion had been untimely as to Providence and Tenet, Marquez timely filed her motion with respect to Dr. Vigil since he did not file a motion to dismiss or for other sanctions until July 14, 1999. Marquez filed a verified motion for grace period prior to the August 31 hearing on Dr. Vigil's motion. Thus, she timely filed her motion prior to the hearing on Dr. Vigil's motion. *See* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(g) (requiring that the motion for grace period be filed prior to any hearing on a defendant's motion for sanctions).

At the July 1 hearing, only Mr. Hedicke appeared and testified on behalf of Marquez. He testified that he never saw Dr. Huffman's report until March of 1999, one month after it had been filed with the clerk's office. According to him, the report came into the office but neither he nor Mr. Poulos saw it prior to its filing. Instead, a legal assistant took the report and filed it "with the Court" without showing it to the attorneys.[8] He did not specify the date that his office received the report. However, as pointed out by Providence and Tenet, the report was first filed on February 3, 1999 and Mr. Poulos signed the certificate of service and notice of filing of expert report. At the August 31 hearing on Dr. Vigil's motion to dismiss, the reporter's record from the July 1 hearing was admitted into evidence.[9] Marquez did not offer any additional sworn testimony, but Mr. Hedicke stated without objection that Dr. Huffman's report, through accident or mistake, was not filed when it was received in their office in November of 1998. Normally, an attorney's statements must be under oath to be considered evidence. *See Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997); *Knie v. Piskun,* 23 S.W.3d 455, 463 (Tex.App.— Amarillo 2000, pet. denied). The opponent of the testimony, however, can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary. *Banda,* 955 S.W.2d at 272; *Knie,* 23 S.W.3d at 463. Unlike what occurred in *Banda* and *Knie,* counsel did not preface his remarks by stating that he was making them as an officer of the court nor did he refer to his argument as testimony, and therefore, it would not have been apparent to opposing counsel that an objection was required. We do not find that Providence, Tenet, or Dr. Vigil waived the oath requirement.

Given counsel's testimony that Dr. Huffman's report was filed with the clerk's office when it was received in his office, the trial court could have found that counsel did not obtain the report until the date of its filing, February 3, 1999. No other explanation was offered for its untimely filing. Thus, Marquez failed to establish that the untimely filing of the report was not intentional or the result of conscious indifference but was the result of accident or mistake. Even if the unsworn statements of counsel made at the second hearing could have been considered as evidence, the trial court still would not have abused its discretion in finding against Marquez on this issue in the face of counsel's conflicting statements regarding receipt of the expert report. In apparent contradiction of his testimony at the first hearing, counsel stated during the subsequent hearing that the report had been received in his office several months before the filing date and had not been filed due to accident or mistake. Given the inconsistency, the trial court could have accepted one explanation and rejected the other. While another court might draw a different conclusion from the evidence, that does not establish an abuse of discretion. Under these circumstances, the trial court did

---

8. At oral argument, Mr. Hedicke asserted that he has since discovered that he was mistaken in his belief about what had occurred, and therefore, his testimony is erroneous. The record does not reflect that Marquez ever presented this evidence to the trial court. Because our review is restricted to the evidence contained in the record, we are unable to consider these statements of counsel.

9. In her motion for an extension of time made in response to Dr. Vigil's motion to dismiss, Marquez asked that the trial court take judicial notice of the testimony and evidence offered at the July 1 hearing.

not abuse its discretion in denying the request for a grace period pursuant to Section 13.01(g). Issues One and Two are overruled.

## WAIVER

 In Issue Three, Marquez argues without providing any authority that Providence, Tenet, and Dr. Vigil waived their right to seek dismissal because they did not file a motion pursuant to Section 13.01(b) [10] when Marquez failed to file an expert report on the ninetieth day after suit had been filed as required by Section 13.01(a)(3).[11] Given Marquez's failure to cite any authority in support of this argument, she has waived review of this issue. *See* Tex.R.App.P. 38.1(h) (requiring brief to include clear and concise argument for contentions made, with appropriate citations to authority and record); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 435 (Tex.App.—Houston [14th Dist.] 2000, pet. denied); *Keim v. Anderson*, 943 S.W.2d 938, 941 (Tex.App.—El Paso 1997, no pet.). Even if Marquez had not waived the claim, Section 13.01(e) does not predicate a defendant's motion to dismiss upon pursuing a

motion under Section 13.01(b). Issue Three is overruled.

## CONSTITUTIONALITY OF MLIIA

In her fourth issue on appeal, Marquez alleges that application of the Texas Medical Liability and Insurance Improvement Act is unconstitutional as applied to her. We understand Marquez to make two distinct constitutional claims. First, she argues that the MLIIA unreasonably restricts her access to the courts in violation of the open courts and due process guarantees of Article 1, section 13 of the Texas Constitution. Second, she asserts that the *sanctions* imposed as a result of her untimely filing of the expert report are arbitrary and not reasonably related to the statutory goal of insuring that frivolous claims are not filed against designated health care providers, and therefore, this application of the statute has violated her right to due process under both the Texas and United States Constitutions.

We begin our analysis by presuming that the statute is constitutional. *See Enron Corporation v. Spring Independent School District*, 922 S.W.2d 931, 934 (Tex. 1996). It is for the Legislature rather than this Court to determine the wisdom

---

10. Section 13.01(b) provides: "If, as to a defendant physician or health care provider, an expert report, cost bond, or cash in lieu of bond has not been filed or deposited within the period specified by Subsection (a) or (h) of this section, the court, on the motion of the affected physician or health care provider, shall enter an order that: (1) requires the filing of a $7,500 cost bond with respect to the physician or health care provider not later than the 21st day after the date of the order; and (2) provides that if the claimant fails to comply with the order, the action shall be dismissed for want of prosecution with respect to the physician or health care provider, subject to reinstatement in accordance with the applicable rules of civil procedure and Subsection (c) of this section." Tex.Rev.Civ. Stat.Ann. art. 4590i, § 13.01(b).

11. Section 13.01(a) provides: "In a health care liability claim, a claimant shall, not later than the 90th day after the date the claim is filed: (1) file a separate cost bond in the amount of $5,000 for each physician or health care provider named by the claimant in the action; (2) place cash in an escrow account in the amount of $5,000 for each physician or health care provider named in the action; or (3) file an expert report for each physician or health care provider with respect to whom a cost bond has not been filed and cash in lieu of the bond has not been deposited under Subdivision (1) or (2) of this subsection." Tex.Rev.Civ.Stat.Ann. art. 4590i, § 13.01(a).

or expedience of a law. *Id.* The burden is on Marquez to demonstrate that the statute fails to meet constitutional requirements. *Id.* In the context of her due process-open courts claim, Marquez was required to show that: (1) a cognizable common-law cause of action is being restricted; and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983); *McGlothlin v. Cullington,* 989 S.W.2d 449, 451 (Tex.App.—Austin 1999, pet. denied).

It is undisputed that Marquez's claim based upon medical negligence is a recognized common law claim. Turning to the second issue, Section 13.01 provides a plaintiff with two methods of preserving a health care claim: (1) posting a cost bond or cash deposit; or (2) filing an expert report. *See McGlothlin,* 989 S.W.2d at 452. The Legislature imposed these requirements in order to keep down medical insurance costs and health care costs by reducing frivolous medical malpractice claims, and to allow a defendant physician to recoup some portion of court costs from a successful defense. *See McGlothlin,* 989 S.W.2d at 452. We need not proceed further with this constitutional analysis, however, because Marquez produced no evidence that these requirements actually worked to prevent her from pursuing her claim. *Id.* at 453. In fact, the record reflects that Marquez was able to obtain an expert report but she filed it untimely. Therefore, her first argument is without merit.

Relying on *Remington Arms Company, Inc. v. Caldwell,* 850 S.W.2d 167 (Tex.1993) and *TransAmerican Natural Gas Corporation v. Powell,* 811 S.W.2d 913 (Tex. 1991), Marquez also challenges the statutorily-required sanctions on due process grounds. She argues that there is no direct relationship between the offensive conduct and the sanctions imposed, and that the sanctions are excessive. Marquez acknowledges that *Remington* and *TransAmerican* are mandamus proceedings which involved review of sanctions for discovery abuse under Tex.R.Civ.P. 215, but she insists that the same test should be applied here.

In *TransAmerican,* the Supreme Court stated that the imposition of severe sanctions, such as dismissal of the cause of action, is limited not only by the two-part standard which sets the bounds of permissible sanctions under Rule 215, but also by constitutional due process. *TransAmerican,* 811 S.W.2d at 917–18. As a constitutional matter, discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *TransAmerican,* 811 S.W.2d at 918, *citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 705–06, 102 S.Ct. 2099, 2105–06, 72 L.Ed.2d 492 (1982). Further, sanctions which preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *TransAmerican,* 811 S.W.2d at 918, *citing National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976).

Providence, Tenet, and Dr. Vigil insist that *Remington* and *TransAmerican* have no application here since we are not concerned with sanctions imposed under Rule 215 for discovery violations, and further, the sanctions imposed here are statutorily-mandated rather than discretionary. We agree that *Remington* and *TransAmerican* do not directly apply to these

facts but sanctions imposed pursuant to Section 13.01(d) are not exempt from due process analysis. In that regard, *Trans-American* can provide some guidance.

The sanctions were imposed against Marquez as a direct result of her failure to timely file an expert report. Section 13.01 provided her with three methods of obtaining an extension of time in which to establish compliance, but she attempted to take advantage of only one of them. Although given an opportunity, Marquez did not offer sufficient evidence that her failure to timely file the report was the result of accident or mistake, and thus, she did not negate the inference that her non-compliance was intentional or the result of conscious indifference. Dismissal under these circumstances is not contrary to the due process clause. Issue Four is overruled.

### ATTORNEY'S FEES

■■■■■ In Issue Five, Marquez asserts that the trial court abused its discretion in awarding attorney's fees to Providence, Tenet, and Dr. Vigil because the supporting affidavits of counsel are conclusory in that they stated a total amount of hours expended in the case but did not provide any detailed description. If the plaintiff fails to comply with Section 13.01(d), the trial court is mandated by Section 13.01(e)(1) to award attorney's fees and costs to the successful defendant. TEX. REV.CIV.STAT.ANN. art. 4590i, § 13.01(d), (e)(1); *Tibbetts*, 2 S.W.3d at 665. However, nothing in Section 13.01(e) modifies the general rule that a party seeking attorney's fees must present evidence of attorney's fees. *Tibbetts*, 2 S.W.3d at 665, *citing* TEX.DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted*, TEX.GOV'T CODE ANN. tit. 2, subtit. G app. A (Vernon Supp.2001) (TEX. STATE BAR R. art. X, § 9) and *Estrello v. Elboar*, 965 S.W.2d 754, 759 (Tex.App.— Fort Worth 1998, no pet.). When consid-

ering what amount to award, the fact finder should be guided by the eight factors listed in Rule 1.04(b) as well as other relevant factors. *See Arthur Andersen & Co. v. Perry Equipment Corporation*, 945 S.W.2d 812, 818 (Tex.1997). Because the affidavits of counsel for Providence, Tenet, and Dr. Vigil sufficiently address the relevant factors listed in Rule 1.04(b), we find no abuse of discretion in the award of attorney's fees and costs. Issue Five is overruled.

### APPLICATION OF MLIIA TO TENET

■■■■■ In her final issue, Marquez contends that because Tenet is not a healthcare provider as defined by Article 4590i, it may not obtain dismissal of the suit against it for Marquez's non-compliance with the Act. Because Marquez provides no authority in support of her argument, it is waived. *See* TEX.R.APP.P. 38.1(h) (requiring brief to include clear and concise argument for contentions made, with appropriate citations to authority and record); *Keim*, 943 S.W.2d at 941. Furthermore, Marquez's suit alleges that Tenet is vicariously liable for the conduct of Providence and Dr. Vigil who are both healthcare providers within the meaning of the MLIIA. She did not allege any independent causes of action against Tenet. Since the trial court properly dismissed the claims against Providence and Dr. Vigil for non-compliance with Section 13.01, there is no basis for liability with respect to Tenet. Under these circumstances, there is no prohibition to Tenet seeking dismissal even though it is not a healthcare provider under the Act. Issue Six is overruled. Having overruled each of the issues for review, we affirm the dismissal orders.