charlie joe tinker long



 NO. 12-00-00363-CV





IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


CHERYL FORREST AND
§
 APPEAL FROM THE 

SAM FORREST,

APPELLANTS


V.


GUY O. DANIELSON, III, M.D.,
§
 COUNTY COURT AT LAW #2

DAVID B. KERNS, M.D., SILAS E.

DUNCAN, M.D., AND TRINITY-MOTHER

FRANCES HEALTH SYSTEM A/K/A

MOTHER FRANCES HOSPITAL

REGIONAL HEALTH CARE CENTER,

APPELLEES
§
 SMITH COUNTY, TEXAS

 

 Cheryl Forrest and Sam Forrest ("the Forrests") appeal the trial court's final order dated
November 6, 2000, granting motions for dismissal in favor of Guy Danielson, III, M.D., David
Kerns, M.D., Silas E. Duncan, M.D., and Trinity-Mother Frances Health System a/k/a Mother
Frances Hospital Regional Health Care Center, pursuant to the Medical Liability and Insurance
Improvement Act ("the Act"). (1) The Forrests raise two issues on appeal. We affirm.


Background


 Cheryl Forrest underwent surgery on November 12, 1996. The surgery was to remove a disc
protrusion in her back and involved a three-level fusion. A pedicle screw and rod system was
implanted in her back. Soon thereafter, complications arose. Mrs. Forrest's condition worsened,
allegedly because of the pedicle screw and rod system and its installation. The pedicle screw and
rod system was removed from her body in March 1997. 

 On November 12, 1998, the Forrests filed suit against the manufacturer and distributor of the 
 pedicle screw and rod system for defective medical products. On November 12, 1998, the Forrests
sent notification letters to the medical providers, Guy Danielson, III, M.D., David Kerns, M.D., Silas
E. Duncan, M.D., and Trinity-Mother Frances Health System. On January 25, 1999, the Forrests
filed suit against the medical providers.

 On April 28, 1999, the Forrests filed an expert report prepared by Dr. Robert A. Callewart,
M.D. On May 5, 1999, Dr. Duncan and Dr. Kerns filed a motion to compel compliance with article
4590i, section 13.01 of the Act, alleging the Forrests' expert report was inadequate because it failed
to name each defendant and asserting that the Forrests must file a separate report as to each provider. 
On June 18, 1999, the Forrests filed an amended expert report identifying each doctor individually,
but still not referencing the hospital. Thereafter, the defendants were granted summary judgment
on the basis that the Forrests' lawsuit was barred by limitations. This court reversed and remanded
that judgment on January 31, 2000. See Cheryl Forrest and Sam Forrest v. Guy O. Danielson, III,
M.D., J. Stewart Crutchfield, M.D., David B. Kerns, M.D., Silas E. Duncan, M.D., G. Peter Foox,
M.D., and Trinity-Mother Frances Health Sys., No. 12-99-00256-CV, 2000 Tex. App. LEXIS 1003
(Tyler Jan. 31, 2000, no pet.) (not designated for publication). 

 On March 31, 2000, Dr. Danielson filed a motion to dismiss under article 4590i, section
13.01(d) of the Act, alleging the Forrests' expert report failed to comply with the statutory
requirements. On June 29, 2000, a hearing was held on that motion and all other remaining
defendants filed motions to dismiss on the same ground. Dr. Danielson's motion was granted and
the case against him dismissed on July 3, 2000. On August 2, 2000, the Forrests filed a motion for
new trial and a motion pursuant to section 13.01(g) requesting an additional thirty days to file
another amended report. The next day, a hearing was held on the remaining defendants' motions to
dismiss. On November 6, 2000, the court signed the Final Order of Dismissal, Nunc Pro Tunc,
Denial of Motion for New Trial and Denial of Motion Pursuant to 13.01(g), article 4590(i). The
Forrests thereafter appealed, raising two issues.

Applicable Law

 This medical malpractice case is governed by the Medical Liability and Insurance
Improvement Act. The Act states that a claimant shall, not later than the ninetieth day after the date
the claim is filed, do one of three things, either file a $5,000 cost bond for each physician or health
care provider named by the claimant in the action, place in an escrow account $5,000 cash for each
physician or health care provider named by the claimant in the action, or "file an expert report for
each physician or health care provider with respect to whom a cost bond has not been filed and cash
in lieu of the bond has not been deposited. . . ." Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(a).

 Further, within 180 days of the filing of the health care liability claim, a claimant must, for
each physician or health care provider against whom a claim is asserted, "furnish to counsel for each
physician or health care provider one or more expert reports, with a curriculum vitae of each expert
listed in the report" or "voluntarily nonsuit the action against the physician or health care provider." 
Id. § 13.01(d). If a claimant fails to comply with subsection (d) "within the time required, the court
shall, on the motion of the affected physician or health care provider, enter an order awarding as
sanctions against the claimant or the claimant's attorney . . . the dismissal of the action of the
claimant against that defendant with prejudice to the claim's refiling." Id. § 13.01(e). If the plaintiff
does timely file a report, the defendant may move to challenge the adequacy of the report, requesting
dismissal, and the trial court must grant the motion if it appears to the court that the report does not
represent a good faith effort to comply with the definition of an "expert report." Id. § 13.01(l). 


Denial of Extension of Time to File Expert Report

 In their first issue, the Forrests contend the trial court erred in denying their request for an
extension of time under section 13.01(g) of the Act. Subsumed under this issue are four subissues:
(1) that the inadequacy of the expert report was not intentional or due to conscious indifference, (2)
that the inadequacy of the expert opinion was the result of accident or mistake, (3) the legislature
intended trial courts to use "special caution" in dismissing cases without granting a thirty-day grace
period under section 13.01(g), and (4) public policy requires courts to protect a litigant's right of due
process.

 We review the trial court's decision to deny a request for extension of time pursuant to
section 13.01(g) under an abuse of discretion standard. Marquez v. Providence Mem. Hosp., 57
S.W.3d 585, 590 (Tex. App.-El Paso 2001, no pet.); Hargrove v. Denno, 40 S.W.3d 714, 716 (Tex.
App.-San Antonio 2001, no pet.). An abuse of discretion with respect to factual matters occurs if
the record establishes the trial court acted without reference to any guiding rules or principles, or in
other words, acted in an arbitrary or unreasonable manner. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241 (Tex. 1985). However, a trial court has no discretion in determining what the
law is or applying the law to the facts. Christian v. Christian, 985 S.W.2d 513, 514 (Tex. App.-San
Antonio 1998, no pet.).

 The Act contains three distinct provisions by which a plaintiff who has not complied with
the Act's requirements for filing an expert report may receive an extension of time to file his expert
report. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(f), (g), & (h). Pertinent to this case,
subsection (g) provides that:


 Notwithstanding any other provision of this section, if a claimant has failed to comply with a deadline
established by Subsection (d) of this section and after hearing the court finds that the failure . . . was
not intentional or the result of conscious indifference but was the result of an accident or mistake, the
court shall grant a grace period of 30 days to permit the claimant to comply with that subsection. A
motion by a claimant for relief under this subsection shall be considered timely if it is filed before any
hearing on a motion by a defendant under Subsection (e) of this section.



Id. § 13.01(g).

 The Forrests filed their expert report on April 28, 1999 and their amended report on June 18,
1999. About fifteen months later, after the first appeal to this court and remand to the trial court and,
most importantly, more than a month after the hearing on Dr. Danielson's motion to dismiss, the
Forrests filed their 13.01(g) motion for extension of time. To be timely, a motion for extension of
time pursuant to section 13.01(g) must be filed before any hearing on a motion by a defendant under
section 13.01(e). The Forrests' motion was untimely. Therefore, the trial court did not abuse its
discretion in denying it. Hargrove, 40 S.W.3d at 716. As this disposes of issue one, we need not
address the arguments under this issue. Tex. R. App. P. 47.1. We overrule the Forrests' first issue.


Sufficiency of Expert Report

 In their second issue, the Forrests contend that the trial court erred in finding their expert
report failed to meet the requirements of article 4590i. They assert that Dr. Callewart's report met
the requirements of section 13.01(r)(6), which identifies the matters to be contained in the report. 
They contend that Dr. Callewart's report informed the defendants of the specific conduct of which
they complained, and Dr. Callewart's report was sufficient for the trial court to find their claims
meritorious. Therefore, their argument continues, as the report met the statutory requirements, the
trial court erred in dismissing their suit.

 On April 23, 1999, the Forrests filed their first expert report required by article 4590i. It
consists of a one page letter from Dr. Callewart describing Mrs. Forrest's medical history since mid-1991. Dr. Callewart stated that he felt the surgery was unnecessary and he saw no indication for a
three-level fusion. On May 5, 1999, Dr. Duncan and Dr. Kerns filed a motion to compel the Forrests
to comply with the requirements of article 4590i, section 13.01 and requesting dismissal if they
failed to comply. On June 18, 1999, the Forrests filed an amended expert report in which the only
change was to individually name each doctor as performing the procedure, and to add the words "and
improper" to the sentence "I feel this surgery was unnecessary." Finally, the amended report
concluded that "More likely than not, this procedure caused Ms. Forrest to have symptoms and
findings not present prior to surgery." Neither the original nor the amended report named Trinity-Mother Frances Health System.

 The defendants filed motions to dismiss the cause of action pursuant to section 13.01(e). 
They alleged the amended expert report failed to meet the requirements of section 13.01(d). Citing
section 14.01 of the Act, the three physicians contended the amended expert report failed to establish
that Dr. Callewart, an orthopedic surgeon, had the qualifications to give an expert opinion regarding
the defendant doctors, one of whom is a neurosurgeon and two of whom are vascular surgeons. The
defendants also contended the expert report did not comply with the definition of expert report in
section 13.01(r)(6) in that it failed to establish knowledge of applicable standards of medical care,
how any of the defendants' actions failed to meet the standard of care, or the causal connection
between the alleged failure to meet the standard and the injury. Further, the hospital asserted that
the report does not refer to any act by any employee or agent of Trinity-Mother Frances. 

 Since the trial court entered its dismissal order, the Texas Supreme Court has addressed the
Forrests' issue in American Transitional Care Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873
(Tex. 2001), which held that a trial court's decision to dismiss a case under section 13.01 of the Act
is reviewed under an abuse of discretion standard. Id. at 877. A trial court shall grant a motion
challenging the adequacy of an expert report if it appears to the court, after hearing, that the report
does not represent a good faith effort to comply with the statutory definition of an expert report. 
Tex. Rev. Civ. Ann. art. 4590i, § 13.01(l). The statute defines an expert report as "a written report
by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards
of care, the manner in which the care rendered . . . failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed." Id. § 13.01(r)(6). A
report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of
the elements identified in the statute. Palacios, 46 S.W.3d at 878. The report does not have to meet
the same requirements as the evidence offered in a summary judgment proceeding or at trial. Id. at
879. The report must fulfill the dual purpose of notifying each defendant of the specific conduct
called into question and providing support for a trial court to conclude the claims have merit. Id. 
A report that merely states the expert's conclusions does not fulfill these two purposes. Id. A report
that lacks any of the statutory requirements cannot constitute a good faith effort. Id. In determining
whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners
of the report. Id. at 878. If a trial court determines that an expert report does not meet these
statutory requirements and the time for filing a report has passed, it must then dismiss with prejudice
the claims against the defendant who has challenged the report. Id. at 877.

 One basis on which the defendants attacked the report was that it failed to show that Dr.
Callewart was qualified to be an expert witness in this case. Mrs. Forrest underwent a surgical
procedure to remove a disc protrusion in her back. Dr. Duncan and Dr. Kerns exposed the spine, by
way of the abdomen, to provide Dr. Danielson's access so he could perform the lumbar intervertebral
fusion. Dr. Danielson specializes in neurosurgery, surgery of the nervous system. Drs. Kerns and
Duncan are vascular surgeons. According to Dr. Callewart's curriculum vitae, he is board certified
in orthopedic surgery.

 Section 14.01 of the Act sets out the requirements for an expert witness in a suit against a
physician:


 [A] person may qualify as an expert witness on the issue of whether the physician departed from
accepted standards of medical care only if the person is a physician who: 

 (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time
the claim arose;

 (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the
illness, injury, or condition involved in the claim; and

 (3) is qualified on the basis of training or experience to offer an expert opinion regarding those
accepted standards of medical care. 



Tex. Rev. Civ. Stat. Ann. art. 4590i, § 14.01(a). In determining whether the expert is qualified on
the basis of training and experience, the court is to consider whether, at the time the claim arose or
the testimony is given, the witness is board certified or has other substantial training or experience
in an area of practice relevant to the claim and is actively practicing medicine in rendering medical
care services relevant to the claim. Id. § 14.01(c). Because of the increasing specialization of
medicine, "there is no validity, if there ever was, to the notion that every licenced medical doctor
should be automatically qualified to testify as an expert on every medical question. . . . [t]he
proponent of the testimony has the burden to show that the expert 'possesses special knowledge as
to the very matter on which he proposes to give an opinion.'" Broders v. Heise, 924 S.W.2d 148,
152-53 (Tex. 1996)(quoting 2 Ray, Texas Law of Evidence: Civil and Criminal § 1401, at 32
(Texas Practice 3d ed. 1980)). Thus, the issue is the specific subject matter and the expert's
familiarity with it. Broders, 924 S.W.2d at 153. 

 Orthopedic surgery is the branch of surgery that deals with the correction of injuries or
disorders of the skeletal system and associated muscles, joints, and ligaments. The American
Heritage Stedman's Medical Dictionary 586 (1995). As the spine is part of the skeletal
system, one who specializes in orthopedics should be familiar with procedures to correct problems
of the spine. Thus, Dr. Callewart's specialization might be relevant to the Forrests' claim. However,
there is nothing in the expert report or Dr. Callewart's curriculum vitae to indicate that he is familiar
with either the procedure used by Drs. Duncan and Kerns to gain access to the spine, or with the
procedure used by Dr. Danielson to remove the disc protrusion and install the pedicle screw and rod
system. Dr. Callewart does not state that he has knowledge of the accepted standards of medical care
for the diagnosis, care, and treatment of a disc protrusion. Further, Dr. Callewart does not show he
is qualified on the basis of his training or experience to offer an expert opinion regarding those
accepted standards of medical care. In short, the Forrests did not establish that Dr. Callewart was
qualified to give an expert opinion as to the medical procedure performed on Mrs. Forrest. See
Broders, 924 S.W.2d at 153. 

 As previously noted, the trial court is to consider whether the expert report represents a good
faith effort to comply with the definition in section 13.01(r)(6). In order for an expert report to
constitute a good faith effort, it must contain "as to each defendant, a fair summary of the expert's
opinions about the applicable standard of care, the manner in which the care failed to meet that
standard, and the causal relationship between that failure and the claimed injury." Palacios, 46
S.W.3d at 878. The amended expert report filed in this case lacks all of the requirements of section
13.01(r)(6). The report contains a review of the medical records, which is not required by section
13.01(r)(6). Moreover, not only does it not present a fair summary of the three required elements,
it does not even recite an applicable standard of care, explain how the medical care failed to meet
that standard, or identify the causal relationship between that failure and the claimed injury. Rather,
the report states that "this surgery was unnecessary and improper" and concluded that "[m]ore likely
than not, this procedure caused Ms. Forrest to have symptoms and findings not present prior to
surgery." Such conclusions are inadequate to meet the requisites of section 13.01(r)(6). The trial
court did not abuse its discretion in finding the expert report failed to meet the statutory
requirements. 

 This lawsuit was filed November 16, 1998. The initial expert report was filed April 28, 1999,
and was amended June 18, 1999. The hearings on defendants' motions to dismiss were held June
29, 2000 and August 3, 2000. Palacios held that, after the expiration of the 180-day time period
after the filing of the lawsuit, if no good faith expert report has been filed pursuant to section
13.01(d), section 13.01(e) requires the trial court to dismiss the case with prejudice. Id. at 880. The
June 29, 2000 hearing regarding Dr. Danielson was over a year and seven months after the lawsuit
was filed, and more than a year and one month after the expert report was required to be filed. The
August 3, 2000 hearing regarding Drs. Duncan, and Kerns, and Trinity Mother Frances Hospital was
over one year and eight months after the lawsuit was filed, and over one year and two months after
the expert report was required to be filed. Accordingly, the trial court was required to dismiss the
lawsuit. Id. The Forrests' second issue is overruled.

 Having found no reversible error, we affirm the trial court's order of dismissal.


 SAM GRIFFITH 

 Justice



Opinion delivered March 28, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.


































(PUBLISH)


1. Tex. Rev. Civ. Stat. Ann. art. 4590i (Vernon Supp. 2002).