COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ERIC B. DARNELL, | § | |
| Appellant, | § | No. 08-16-00282-CV |
| | § | Appeal from the |
| v. | § | 384th District Court |
| CARMEN BROBERG and MICHAEL J. ZIMPRICH, | § | of El Paso County, Texas |
| Appellees. | § | (TC# 2015DCV1502) |
| | § | |

## **O P I N I O N**

Appellant Eric B. Darnell, an attorney, appeals from an order of the trial court imposing sanctions on him for making misrepresentations to the court and for disobeying a court order. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

This case started with the filing of a lawsuit against an auto repair shop for work performed on a BMW automobile. Appellee Carmen Broberg filed suit against Jaime Parra, Jr., an individual doing business as "Lube-Tune," and Rick Parra, his brother who worked as manager of the business, based on repairs performed on her vehicle. Broberg claimed she took her car to Lube-Tune on several occasions from February through September of 2013, yet her car was returned to her in unsatisfactory condition after each repair. Broberg sued for breach of the

implied warranty of good and workmanlike services, deceptive trade practices, breach of contract, and negligence. Attorney Michael Zimprich, who is an Appellee on this appeal, represented Broberg and signed all her pleadings.

In responding, Jaime Parra, Jr., filed a general denial and two affirmative claims: (1) a counterclaim against Broberg, claiming that she failed to pay for repairs made to her vehicle; and (2) a third-party petition against Appellee Zimprich for claims of business disparagement.[1] The third-party petition alleged identical claims against Broberg and Zimprich asserting that each of them had contacted Jaime Parra, Jr., in the fall of 2013, and demanded repairs be made to Broberg's vehicle to avoid litigation. Parra alleged repairs were made as agreed; yet, Zimprich filed suit on Broberg's behalf falsely asserting repairs had not been made. Appellant Darnell represented both Parras and signed their pleadings as attorney of record.

Soon the suit itself turned into a morass of motions for sanctions and contempt. On February 8, 2016, Darnell moved to disqualify Zimprich from serving as Broberg's attorney asserting he was both a fact witness and a party to the litigation. In response, Broberg and Zimprich filed a motion for contempt and for imposition of sanctions against Jaime Parra, Jr., Rick Parra, and Darnell, claiming these parties filed a frivolous third-party petition containing false statements about events occurring in the fall of 2013. The motion for contempt asserted that Zimprich was not retained by Broberg until April of 2015. Thus, the motion alleged that Darnell filed groundless pleadings, without any legal basis, in bad faith, and for improper purposes. The

---

[1] In the counterclaim, Jaime Parra, Jr., alleged that Lube-Tune had performed all of the contracted repairs on Broberg's vehicle, and that Broberg had failed to make payment for the repairs, and that Broberg was in breach of contract, had engaged in common-law and statutory fraud, and was liable for "business disparagement," for allegedly publishing multiple statements that included "disparaging words" about Parra and his business.

motion recited Rule 13 and section 10.001 of the Texas Civil Practice and Remedies Code as the basis for the request for sanctions.

On February 9, 2016, the trial court held a hearing presided over by Judge Patrick Garcia on the motion for contempt and sanctions and a separate motion to quash filed by Darnell. At the hearing, Zimprich argued the third-party petition filed against him and his client was frivolous, both factually and legally, and asserted that Darnell had filed his pleading for the improper purpose of attempting to disqualify him from serving as Broberg's attorney. Zimprich asserted, without objection, that the facts set forth in the third-party petition were false as he personally did not contact Lube-Tune in 2013 to arrange a settlement agreement given he was retained two years later in 2015. Zimprich also argued that even if the facts alleged were true, nonetheless, there would be no legal basis to sue him individually for his representation of Broberg. Zimprich requested the court strike the third-party claim as a frivolous pleading.

In an order signed February 16, 2016, the trial court granted relief and struck Jaime Parra Jr.'s third-party petition as a frivolous pleading that was filed for unethical motives. The trial court also struck Parra's third-party claim as a sanction for his contempt of court and disobedience of the court's prior order to be present at a show cause hearing. The court ordered recovery of $451.51 from Darnell as reasonable and necessary expenses incurred in obtaining the court's order.[2] Lastly, the order expressly stated that Jaime Parra Jr. was barred from refiling both the third-party petition and the counter petition.

---

[2] At the hearing on the motion, the trial court expressly denied Zimprich's request for attorney's fees as an additional sanction.

On March 31, 2016, and April 1, 2016, respectively, Jaime Parra, Jr. filed a motion to reconsider the trial court's sanction award and a motion to set aside the court's order. Before these motions were heard, however, the trial court was recused for reasons that are not apparent from the record. Thereafter, Judge Susan Larsen, a visiting judge, was appointed to hear all pending motions and the remainder of the case. On May 3, 2016, Darnell re-filed both an amended counter-petition and an amended third-party petition against Zimprich setting forth virtually identical factual allegations and legal claims as before despite the court's order barring him from doing so. In response, Zimprich filed a second motion for contempt and sanctions arguing that Darnell acted in contempt and in violation of the trial court's earlier order. In addition, Zimprich also argued that Darnell made numerous false representations including (1) a claim that Zimprich had not served pleadings, when in fact the record demonstrated that he had, and (2) a claim that Darnell had served Zimprich with pleadings, when in fact the record demonstrated that he had not. With supporting documentation, Zimprich also asserted that Darnell falsely represented that he had failed or refused to allow Darnell to inspect Broberg's vehicle that was the subject of the suit. Zimprich asked the trial court to impose sanctions of $9,460 in attorney's fees for services he had been forced to perform to address Darnell's misconduct. Zimprich attached an exhibit and affidavit attesting to the time spent and work performed in response to Darnell's allegedly improper conduct.

On July 6, 2016, the trial court held a hearing on Darnell's motion to disqualify Zimprich from serving as Broberg's attorney presided over by Judge Larsen. At the hearing, both Parras testified about their first encounter with Zimprich describing it as occurring approximately two-and-a-half years *after* repairs were completed on Broberg's car. They described Broberg as

4

coming to their repair shop and demanding they contact her attorney to avoid litigation. The Parras testified they left a voicemail for Zimprich but did not hear back from him. Later, after the lawsuit had been filed, the Parras recalled that Zimprich came to the shop to ask questions about their business operations and to obtain a business card.[3] Darnell acknowledged that Zimprich had no further contact with the Parras other than what was described by their testimony. On July 22, 2016, the court denied the motion to disqualify Zimprich from representing Broberg.

Thereafter, on July 28, 2016, the court heard Zimprich's motion for contempt and for sanctions regarding Darnell's conduct in re-filing the third-party petition that had been barred by the court earlier. At the hearing, Darnell's attorney asked for a reconsideration of the court's initial order finding the third-party petition to be frivolous claiming it was not groundless or filed in bad faith. He argued the newly-filed third-party petition was a new and different pleading although largely containing the same allegations. In response, Zimprich argued that Darnell filed a third-party petition identical to his original, in bad faith, and in violation of the trial court's original order expressly prohibiting him from doing so. At the hearing, the parties also argued over whether Darnell acted in bad faith by alleging that misrepresentations were made to the trial court. Darnell's attorney argued he had simply been mistaken in the representations he had made.

On October 5, 2016, the trial court found, among other things, that Darnell, "without explanation or permission," had refiled his third-party petition against Zimprich, and held that the

---

[3] At an earlier hearing held on February 2, 2016, Zimprich advised the trial court that he went to Lube-Tune before he filed suit for the sole purpose of determining who was the proper party to sue. According to Zimprich, he obtained a business card with Rick Parra's name on it, and believed that he was the proper defendant; however, after doing additional investigation, he determined that Jaime Parra was the actual owner of the business.

5

"refiling of pleadings in the face of a court order striking them [was] sanctionable."[4]   The trial court further found that the re-filed third-party petition was "void and of no legal effect."   The court also found that Darnell had in fact made at least two false representations to the trial court claiming that he had not been served with documents, and that Darnell's statements to the contrary were not credible and were "made in bad faith and for improper purposes."   The court found that Darnell had stated on numerous occasions that he had completed service of documents upon opposing counsel when in fact he had not done so.   And finally, the court found that Darnell had stated numerous times throughout the proceedings that Zimprich had refused to proffer the subject vehicle for inspection when the record clearly indicated that such a proffer had been made by Zimprich earlier in the litigation.   Based on these findings, the court imposed a sanction of $2,000 in attorney's fees against Darnell, in addition to the amounts previously ordered by the court.   The court, however, found that none of the complained-of conduct rose to the level of contempt of court.

Once the case proceeded to a jury trial on the merits, the jury ruled against Broberg and entered a take-nothing judgment.

## DISCUSSION

In one issue on appeal, Darnell asserts that the trial court abused its discretion in awarding monetary sanctions against him.   In three sub-parts, Darnell argues the award of sanctions lacked an evidentiary basis, that it covered conduct that fell outside the scope of sanctionable conduct, and no nexus existed between the award of attorney's fees and the sanctionable conduct.

---

[4] The trial court also found that Darnell had re-filed his counter-petition in violation of the trial court's earlier order as well.

6

**Substantive Law Governing Sanctions**

Because neither of the trial court's orders imposing sanctions on Darnell specified the legal basis for the orders, we start our discussion by identifying all potential bases for the courts' orders.[5] *See Citibank, N.A. v. Estes*, 385 S.W.3d 671, 674 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Sprague v. Sprague*, 363 S.W.3d 788, 803 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (identifying basis for trial court's sanctions order among potential bases)). We discern three possible bases for the trial court's order.

First, Chapter 10 of the Texas Civil Practice and Remedies Code allows a trial court to impose sanctions against a party for pleadings that were filed with an improper purpose or that lack legal or factual support. In particular, section 10.001 of the Code provides that upon signing a pleading or motion, a signatory attests that to his best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001.

---

[5] The trial court's first order awarding the amount of $451.51, as reasonable and necessary expenses for filing frivolous pleadings, did not further specify the basis of its order. Thereafter, the court's subsequent order merely recited Zimprich's allegations that Darnell had "violated the Texas Civil Practice and Remedies Code and Texas Rules of Civil Procedure."

A court must generally presume that pleadings and other papers are filed in good faith, and the party asserting that sanctions are appropriate bears the burden of overcoming that presumption. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). Thus, in order to support a motion for sanctions under Chapter 10, the party must support its motion for sanctions with competent proof that "(1) a reasonable inquiry into the allegations in [the opposing party's] pleadings would have disclosed that not all the allegations in its pleadings had or would likely have evidentiary support, and (2) [the moving party] did not make a reasonable inquiry before filing suit." *Id.* at 97 (citing *Low*, 221 S.W.3d at 617). If a trial court determines that a person has signed a pleading or motion in violation of this provision, a court may impose a sanction on the person, a party represented by the person, or both. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004. A sanction under Chapter 10 may include, among other things, an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees. *Id.*

Second, Rule 13 of the Texas Rules of Civil Procedure gives a trial court authority to impose sanctions on a person who has filed pleadings that are groundless and brought in bad faith or for the purpose of harassment. TEX. R. CIV. P. 13; *see also Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 362–63 (Tex. 2014). Rule 13 provides that the signature of an attorney on a pleading constitutes a "certificate" that he has "read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. "'Groundless' for purposes of this rule means no basis in law

8

or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* However, Rule 13 also provides that a court shall "presume that pleadings, motions, and other papers are filed in good faith," and that "[n]o sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order." *Id*. If a pleading, motion or other paper is signed in violation of Rule 13, the court may impose any "appropriate" sanction available under Rule 215, upon the person who signed it, a represented party, or both. *Id*. In turn, Rule 215 allows a trial court to strike out a pleading or parts thereof, dismiss a proceeding with or without prejudice, or "require the party failing to obey the order or the attorney advising him, or both, to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." TEX. R. CIV. P. 215.2(b)(5)(8).

Third, a trial court possesses the inherent authority to impose sanctions for a bad faith abuse of the judicial process even when the specific conduct is not covered by a rule or statute. *See, e.g.*, *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (holding that courts possess inherent power to discipline an attorney's behavior); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that a court has the inherent power to impose sanctions in order to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 50, 111 S.Ct. 2123, 2133, 2135-36, 115 L.Ed.2d 27 (1991) (holding that federal courts have inherent power to impose sanctions on attorneys for bad-faith conduct); *White v. Zhou Pei*, 452 S.W.3d 527, 546 (Tex. App.—Houston [14th Dist.] 2014, no pet.). This inherent power exists to enable courts to

9

effectively perform their judicial functions and to protect their dignity, independence, and integrity. *See Eichelberger*, 582 S.W.2d at 399. A trial court may exercise this inherent authority as necessary to deter, alleviate, or counteract a bad faith abuse of the judicial process. *Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 613 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *see also Howell v. Texas Workers' Comp. Com'n*, 143 S.W.3d 416, 446–47 (Tex. App.—Austin 2004, pet. denied). This includes sanctioning for interference with a court's traditional core functions, which include, but are not limited to: hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgment, enforcing its judgment, managing its docket, and the issuance and enforcement of its orders. *Westview Drive Investments, LLC*, 522 S.W.3d at 613; *see also Dallas County Constable Precinct 5 v. KingVision Pay-Per-View, Ltd.*, 219 S.W.3d 602, 610 (Tex. App.—Dallas 2007, no pet.); *In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In addition, a court may also use its inherent power to impose sanctions for conduct, that if tolerated, "breeds disrespect for and threatens the integrity of our judicial system." *Westview Drive Investments, LLC*, 522 S.W.3d at 614 (quoting *In re Bennett*, 960 S.W.2d at 40).

### Standard of Review

We review the imposition of sanctions under an abuse of discretion standard. *Nath*, 446 S.W.3d at 361 (citing *Low*, 221 S.W.3d at 614); *see also Unifund CCR Partners*, 299 S.W.3d at 98; *Skepnek v. Mynatt*, 8 S.W.3d 377, 380 (Tex. App.—El Paso 1999, pet. denied). Under this standard, a sanctions award will not withstand appellate scrutiny if the trial court acted without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable. *Nath*, 446 S.W.3d at 361 (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex.

2004)). We review the evidence in the light most favorable to the trial court's ruling and draw all reasonable inferences from the evidence to sustain the judgment. *See Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 512 (Tex. App.—Corpus Christi 1992, no writ).

The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *Unifund CCR Partners*, 299 S.W.3d at 97; *see also Nath*, 446 S.W.3d at 361 (an appellate court will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Skepnek*, 8 S.W.3d at 380 (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985). A trial court, however, "abuses its discretion when its decision is contrary to the only permissible view of probative, properly-admitted evidence." *Unifund CCR Partners*, 299 S.W.3d at 97 (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998)).

In reviewing sanctions orders, the appellate courts are not bound by a trial court's findings of fact and conclusions of law; rather, appellate courts must independently review the entire record to determine whether the trial court abused its discretion. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992) (citing *U.S. Fid. & Guar. Co. v. Rossa*, 830 S.W.2d 668, 672 (Tex. App.—Waco 1992, writ denied)). Thus, the court of appeals must examine the entire record— not merely the trial court's findings of fact and conclusions of law—to determine whether the trial court's sanction was appropriate. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583–85 (Tex. 2006).

**Evidentiary Basis**

11

In his first sub-issue, Darnell contends that the trial court abused its discretion when it imposed sanctions on him for his conduct in filing a third-party claim against Zimprich. Darnell contends that courts must presume that pleadings are filed in good faith and Zimprich failed to present evidence overcoming this presumption. He also contends that the trial court found there were arguable grounds for Darnell to file a later motion to disqualify Zimprich based on the same allegations. For the reasons set forth below, we conclude that the record supports the imposition of sanctions by the trial court.

### Filing of the Third-Party Petition

In its order of February 2016, the trial court found the third-party petition to be "frivolous" and to have been filed for "unethical motives," but did not specify whether it found the petition to lack evidentiary support, to lack a legal basis, or both. On review, we conclude that the record supports a finding that the third-party petition lacked both.

With respect to the legal grounds, the petition sought to hold Zimprich responsible for representations he allegedly made to Jaime Parra, Jr.—a non-client—while serving as Broberg's attorney, when he allegedly attempted to negotiate a pre-suit settlement between the two parties. As Zimprich argued in the trial court, however, there is no legal basis for holding an attorney liable for negligent misrepresentations made in situations of this nature. For a non-client to successfully bring a claim against an attorney for negligent misrepresentation, the non-client must prove justifiable reliance on a misrepresentation of material fact. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791, 794 (Tex. 1999). However, a party cannot justifiably rely on statements by an opposing attorney that are made in an adversarial setting such as during settlement negotiations. *Id.* at 794; *see also Blankinship v. Brown*, 399 S.W.3d 303,

12

310 (Tex. App.—Dallas 2013, pet. denied) ("[C]ourts have generally acknowledged that a third party's reliance on an attorney's representation is not justified when the representation takes place in an adversarial context."); *see also Chu v. Hong*, 249 S.W.3d 441, 446 n.19 (Tex. 2008) (recognizing that "fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable"). Statements of attorneys made during negotiations are not considered statements of material fact.[6] *McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 794.

Here, Darnell's third-party petition alleged that Zimprich, while engaged to represent Broberg, made misrepresentations during pre-suit settlement negotiations with the Parras. Given the allegations, the trial court could have reasonably concluded that even if Zimprich had in fact made such misrepresentations, the Parras could not have, as a matter of law, justifiably relied on those representations. Thus, the trial court could have concluded that the third-party petition was groundless in that it lacked any legal basis.

As for evidentiary support, Zimprich asserted at the hearing, albeit not under oath, that the allegations contained in the third-party petition regarding his conduct in speaking with the Parras in 2013 were false given he had not been retained to represent Broberg until April of 2015. Generally, statements must be made under oath to be considered evidence. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); *see also U.S. Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex. 1997); *Marquez v. Providence Mem'l Hosp.*, 57 S.W.3d 585, 593 (Tex. App.—El Paso 2001, pet. denied).

---

[6] In addition, other courts have recognized that unless an attorney is, in essence, entitled to "qualified immunity" for his conduct in representing a client, the attorney would not be able to fulfill his duties to his client for fear of subjecting himself to the "threat of liability," as he would otherwise "be forced constantly to balance his own potential exposure against his client's best interest [internal citations omitted]." *See Dixon Fin. Services, Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g, not designated for publication).

However, the opponent of the testimony can waive the oath requirement "by failing to object when the opponent knows or should know that an objection is necessary." *Banda,* 955 S.W.2d at 272.

Here, Zimprich made factual statements to the court that he was not engaged by Broberg until 2015, or two years after the time the conduct was alleged in the petition. Although Darnell complained that Zimprich's statements were self-serving, he did not make a timely objection to his unsworn testimony. Instead, Darnell argued he did not need to justify his allegations nor could he do so at that time. Failing to object, Darnell waived the oath requirement and Zimprich's statements qualify as evidence that the factual allegations in the third-party petition were false. *See, e.g., Taylor v. Vela*, No. 01-17-00370-CV, 2018 WL 828224, at *3 (Tex. App.—Houston [1st Dist.] Feb. 13, 2018, no pet.) (mem. op.) (where record established that counsel, who was not under oath, was attempting to show that his office did not receive a facsimile transmission, opposing counsel should have known to object to the unsworn statements, and therefore counsel's statements constituted some evidence that he did not receive the facsimile transmission); *Martin v. Fed. Nat'l Mortgage Ass'n*, No. 04-15-00233-CV, 2016 WL 1588517, at *2 (Tex. App.—San Antonio Apr. 20, 2016, no pet.) (mem. op.) (where the record showed that counsel was clearly attempting to prove nonreceipt or the absence of proper service by his statements at a hearing, opposing counsel should have known to object to the unsworn statements; therefore, statements could be considered as evidence).

Even if we were to conclude that these statements could not be considered as evidence, we find it significant that Darnell subsequently asked for this issue to be reheard by the visiting judge, and by the time the matter came before her, the record clearly contained evidence, in the form of sworn testimony from Darnell's own clients, which expressly contradicted the allegations

14

contained in the third-party petition. The Parra brothers both testified at the July 2016 hearing that their first contact with Zimprich came *after* all of the repairs were made to Broberg's car, making it impossible for Zimprich to have fraudulently tricked them into making the repairs as alleged in the third-party petition. Therefore, we conclude that there was sufficient evidence for the trial court to hold that the factual statements made in the third-party petition were patently false, and without any evidentiary basis.

Darnell also contends, however, that the trial court's first order finding that he acted with "unethical motives" also lacked evidentiary support and cannot be squared with the "arguable grounds" remark included in the court's second order. We construe this argument as an assertion that sanctions may not be imposed absent a finding of bad faith or improper motive. Again, we disagree.

First, Chapter 10 of the Texas Civil Practice and Remedies Code does not require a party seeking sanctions to specifically show bad faith or malicious intent—only that the party to be sanctioned certified in his pleading that he made a reasonable inquiry into the allegations in his pleadings and the allegations had evidentiary support, or were likely to have evidentiary support, when in fact he had not made a reasonable inquiry and/or the allegations contained in his petition did not have evidentiary support. *See Nath*, 446 S.W.3d at 369; *see also Low*, 221 S.W.3d at 617 (discussing Chapter 10 requirements). Here, the record clearly supports a finding that Darnell violated Chapter 10 when he filed the third-party petition. His own client's testimony demonstrated that had Darnell made inquiry by asking his own clients, he would have learned that the factual allegations contained in the petition had no evidentiary support. Therefore, we conclude the trial court had the authority to sanction him based on that finding alone.

15

Moreover, even if we were to apply the more stringent standards set forth in Rule 13, which require a finding that the petition was filed in bad faith and/or for an improper purpose, the record here supports such a finding. Like other courts, we recognize that bad faith—for purposes of Rule 13—is more than bad judgment or acting negligently, and instead requires "conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *See Hood v. Edward D. Jones & Co., L.P.*, 277 S.W.3d 505, 509 (Tex. App.—El Paso 2009, pet. denied); *see also In re Willa Peters Hubberd Testamentary Tr.*, 432 S.W.3d 358, 369 (Tex. App.—San Antonio 2014, no pet.) (citing *Robson v. Gilbreath*, 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied)); *Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In sum, the trial court could have inferred that Darnell acted in bad faith based on his filing of the third-party petition given that it not only contained clearly false statements it also alleged claims without a legal basis. *See, e.g., Robson*, 267 S.W.3d at 407 (upholding a finding of bad faith where attorney asserted a groundless claim against defendant and failed to conduct a reasonable inquiry into the facts before filing an amended petition); *Dolenz v. Boundy*, 197 S.W.3d 416, 422 (Tex. App.—Dallas 2006, pet. denied) (upholding a finding that attorney acted in bad faith by filing a pleading that was clearly barred by the statute of limitations, noting that the attorney should have been aware that there were no tolling provisions applicable to his attorney's case); *Skepnek*, 8 S.W.3d at 383 (record supported an inference that attorney knowingly filed a pleading containing false information, and that he therefore acted in bad faith or for purposes of harassment).

**Filing of Motion to Disqualify**

16

And finally, we disagree with Darnell's argument that the court's order itself contradicted a finding that he acted in bad faith. Darnell relies on the court's statement that his motion to disqualify Zimprich from serving as Broberg's counsel contained "arguable," albeit "very flimsy" grounds, for disqualification. Darnell contends that the court's evaluation of the merits of his motion cannot be squared with the court's earlier finding that the third-party petition was filed for an improper purpose. We disagree. Darnell argued in his motion to disqualify that Zimprich was both a party and a fact witness. He asserted that Zimprich should have been disqualified from serving as Broberg's attorney. If Darnell's factual allegations had been true, these allegations may have presented arguable grounds for disqualification. *See, e.g.*, *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (recognizing that disqualification of an attorney is appropriate if the attorney is a material witness and his testimony is "necessary to establish an essential fact" and/or that the attorney's "dual role" as attorney and witness would otherwise prejudice the opposing party) (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)). However, as stated earlier, Darnell's allegations of Zimprich being involved in pre-suit negotiations were shown to be factually false. Therefore, his motion to disqualify had no merit as it had no basis in fact. Accordingly, we see no conflict in the court's orders.

We also find it significant that the visiting judge's decision to impose sanctions on Darnell did not stem from the original filing of the third-party complaint, but from the fact that he re-filed the petition in direct disobedience of the trial court's earlier order barring him from doing so. On appeal, Darnell does not deny that he re-filed the petition in violation of the trial court's earlier order and does not claim that the newly-filed third-party petition varied in any significant way from the original third-party petition. In fact, Darnell essentially overlooks the fact that his

17

disobedience of the court's order provided the primary basis for the visiting judge's sanction award, and he does not brief the propriety of issuing sanctions for such conduct. As such, Darnell has failed to adequately brief this issue for our review under Rule 38.1 of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 38.1(f) (appellant's brief "must state concisely all issues or points presented for review"); *see also Williamson v. Howard*, 554 S.W.3d 59, 73 (Tex. App.—El Paso 2018, no pet.) (finding briefing waiver on issues where the appellant failed to adequately present a clear, concise, and applicable argument).

Moreover, even if we were to overlook the lack of briefing on this issue, we would easily conclude that the trial court had the authority to impose sanctions on Darnell for his conduct. Because the trial court had already struck the petition and barred Darnell from re-filing it, the trial court could have found that Darnell's decision to re-file the petition violated both Chapter 10 or Rule 13. *See, e.g., Corea v. Bilek*, 362 S.W.3d 820, 827 (Tex. App.—Amarillo 2012, no pet.) (upholding sanctions against attorney who re-filed a lawsuit that had been previously dismissed in another county, where attorney should have known that he was barred from attempting to relitigate the dismissed claims). In addition, the visiting judge also could have utilized the court's inherent authority to sanction Darnell for violating the trial court's order, as the disobedience of a court order constitutes a clear abuse of the judicial process, and interferes with the trial court's core functions, which includes issuing and enforcing court orders. *See, e.g.*, *In re K.A.R.*, 171 S.W.3d at 715–17 (sanctions were properly imposed where parties violated a court order, expressly directing them and their counsel to appear at a mediation) (citing *Roberts v. Rose*, 37 S.W.3d 31, 33–35 (Tex. App.—San Antonio 2000, no pet.) (affirming sanctions against attorney for failing to

18

appear at a court-ordered mediation)); *Kutch*, 831 S.W.2d at 510–12 (stating that a violation of a court order in a pending case generally will be a significant interference with a core function).

## Scope of Sanctionable Conduct

Darnell next argues that the trial court's decision to sanction him for a variety of misrepresentations he made in the trial court was erroneous. With this argument, Darnell does not deny he made misrepresentations; rather, he claims that the misrepresentations were simply "isolated statements" outside the scope of sanctionable conduct under the provisions of either Rule 13 or Chapter 10 of the Texas Civil Practice and Remedies Code. Darnell contends that both Rule 13 and Chapter 10 are "addressed to the substantive content of a pleading as a whole," and that these provisions only permit a court to sanction an attorney for filing pleadings that violate the terms of those provisions. In other words, Darnell believes that statements made in a pleading cannot be sanctioned unless the pleading itself is considered groundless or filed for an improper purpose. We conclude, however, that the trial court had the power under either Chapter 10 and/or by virtue of its exercise of its inherent authority to sanction Darnell for his admitted misrepresentations.[7]

First, section 10.001 of the Texas Civil Practice and Remedies Code provides that the signing of a pleading or motion constitutes a certificate by the signatory that, among other things, "*each* allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . (emphasis added)." TEX.

---

[7] Based on our finding that the trial court had the authority to sanction Darnell under either Chapter 10 or under its inherent authority, we need not address whether the trial court had the authority to do so under Rule 13.

CIV. PRAC. & REM. CODE ANN. § 10.001(3). In turn, section 10.004 of the Code provides that a trial court may sanction a person who has signed a pleading in violation of section 10.001. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a). As such, a trial court may sanction an attorney under Chapter 10 for making a factual contention—even an isolated one—in a pleading that has no evidentiary support. *See Low*, 221 S.W.3d at 616 (upholding sanctions for making factual contentions in pleadings that had no evidentiary support); *see also Softech Intern., Inc. v. Diversys Learning, Inc.*, No. 03-07-00687-CV, 2009 WL 638203, at *3 (Tex. App.—Austin Mar. 13, 2009, no pet.) (mem. op., not designated for publication) (recognizing that sanctions under Chapter 10 may be based on a finding that a pleading contained misrepresentations of the facts). We therefore conclude that the trial court had the authority to sanction Darnell under Chapter 10 for various misrepresentations that he made to the court throughout the proceedings.[8]

Second, it is well-established that a party or attorney who makes misrepresentations to a court—whether in a pleading or orally—interferes with the court's core functions, and under such circumstances, a court may invoke its inherent power to impose sanctions on the individual who has engaged in such conduct. *See, e.g.*, *White*, 452 S.W.3d at 546 (recognizing that a party who makes misrepresentations to the court interferes with a court's core functions) (citing *Funderburgh v. Funderburgh*, No. 12-08-00428-CV, 2010 WL 2982906, at *3 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op.); *Sims v. Fitzpatrick*, 288 S.W.3d 93, 106 (Tex. App.—Houston [1st Dist.]

---

[8] Darnell also contends that rather than utilizing Chapter 10, the trial court should have instead considered whether sanctions would have been appropriate under Rule 21b of the Texas Rules of Civil Procedure, which provides that: "If any party fails to serve on or deliver to the other parties a copy of any pleading, plea, motion, or other application to the court for an order in accordance with Rules 21 and 21a, the court may in its discretion, after notice and hearing, impose an appropriate sanction available under Rule 215-2b." TEX. R. CIV. P. 21b. We note, however, that Darnell was not sanctioned for failing to serve documents on opposing counsel, but for making misrepresentations to the effect that he had done so, when in fact he had not.

2009, no pet.) (affirming sanctions based on misrepresentations)); *see also Davis v. Rupe*, 307 S.W.3d 528, 530–31 (Tex. App.—Dallas 2010, no pet.). As we have previously recognized, such misrepresentations are particularly egregious when made by an attorney, as an attorney owes an express duty of candor toward the court in accordance with the Texas Rules of Disciplinary Conduct; therefore, misrepresentations made by an attorney to the court clearly subject offenders to sanctions. *See In re Lerma*, 144 S.W.3d 21, 27 (Tex. App.—El Paso 2004, no pet.) (citing *Schlafly v. Schlafly*, 33 S.W.3d 863, 873 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Am. Paging of Texas, Inc. v. El Paso Paging, Inc.*, 9 S.W.3d 237, 242 (Tex. App.—El Paso 1999, pet. denied)); *see also Eichelberger*, 582 S.W.2d at 399. Although an attorney does owe his client a duty of zealous representation, "[m]isstating facts or misrepresenting the record can never be justified under the guise of zealous advocacy." *See Davis*, 307 S.W.3d at 534–35. Accordingly, we conclude that the trial court had the inherent authority to sanction Darnell for his conduct in making repeated, and unexcused, misrepresentations.

### The Nexus Requirement

Finally, Darnell contends that even if the court was justified in imposing a sanction against him, the court's sanction award should be overturned because there is no nexus between the conduct sanctioned and the award of attorney's fees. Darnell contends the court failed to make express findings connecting the amount of sanctions awarded to the amount of attorney's fees incurred as a result of the sanctionable conduct. We disagree.

Although the trial court has the discretion to impose a sanctions award, an appellate court must review the propriety of the award to ensure that there is a "direct relationship between the particular offensive conduct and the sanction imposed, and the sanction must not be excessive vis-

21

à-vis that conduct." *See CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016); *see also Low*, 221 S.W.3d at 614; *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991). In order to satisfy the first part of this test, the sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party; in particular, the court must attempt to determine who was responsible for the sanctionable conduct—either the party or the attorney, or both—and only visit an appropriate sanction upon the responsible person. *Powell*, 811 S.W.2d at 917; *see also American Flood Research, Inc.*, 192 S.W.3d at 583. To satisfy the second part of the test, the court should ensure that the punishment "fits the crime," and that the sanction is "no more severe than necessary to satisfy its legitimate purposes[.]" *Werley v. Cannon*, 344 S.W.3d 527, 532 (Tex. App.—El Paso 2011, no pet.); *see also Powell*, 811 S.W.2d at 917.

First, the trial court expressly identified Darnell as the party responsible for the sanctionable conduct. Indeed, there was no evidence that his clients were responsible for his actions. Moreover, the nature of the sanctionable acts were those commonly within the control of an attorney and his office, not that of his clients. We agree with the court's assessment. All sanctionable conduct was undertaken by Darnell, as the attorney of record, and we see nothing in the record to suggest that his clients were complicit in his actions. Therefore, we conclude that the court issued its sanction on the appropriate party. *See, e.g., Powell,* 811 S.W.2d at 917 (a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation).

Additionally, the court explained its basis for imposing monetary sanctions on Darnell, expressly requiring payment of $2,000 for attorney's fees to be paid to Zimprich and his client.

An award of attorney's fees is considered an acceptable sanction for violations of both Chapter 10 and Rule 13. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004 (stating that a sanction may include the reasonable expenses incurred by the other party as the result of the sanctionable conduct, including reasonable attorney's fees); TEX. R. CIV. P. 13 (stating that a sanction may include any available under Rule 215, which in turn allows a court to order the sanctioned party to pay the reasonable expenses, including attorney fees, that the opposing party incurred as the result of the sanctionable conduct); *see also Low*, 221 S.W.3d at 620–21 (recognizing that a sanctions award may include attorney's fees and costs).

And finally, we note that imposition of a sanction of $2,000 in attorney's fees is not excessive vis-à-vis the sanctionable conduct as this fee was supported by the record. The record contains evidence that Darnell engaged in repeated instances of sanctionable conduct in the trial court—repeated misrepresentations, filing of frivolous pleadings, and directly disobeying a court order—all of which required Zimprich to file at least two motions for sanctions and to attend more than one court hearing to address such conduct. Zimprich provided evidence of the number of hours he spent as a result of Darnell's sanctionable conduct and requested attorney's fees in the amount of $9,460 for the unnecessary services he had been forced to perform to address Darnell's misconduct. Evidence included documentation of hours spent reviewing and responding to frivolous filings, preparing unnecessary motions, and attending unnecessary hearings. Although the court found the requested amount to be excessive, and awarded Zimprich only a fraction of that amount, the court's award of $2,000 in fees was clearly supported by the record. *See, e.g., Werley*, 344 S.W.3d at 534–35 (concluding that sanction of $12,660 was not excessive where evidence showed party had incurred that amount in attorney's fees); *Stromberger v. Turley Law*

*Firm*, 315 S.W.3d 921, 924 (Tex. App.—Dallas 2010, no pet.) (upholding sanctions of $5,300 for party's failure to appear for his scheduled deposition or produce any documents pursuant to a subpoena duces tecum, based on evidence of the amount of time opposing counsel spent on preparing the sanctions motion with a voluminous file); *Sellers v. Gomez*, 281 S.W.3d 108, 116 (Tex. App.—El Paso 2008, pet. denied) (holding that award of $80,000 sanction was not excessive where evidence showed attorney's fees of $81,000 to $82,000).

We therefore conclude there was a direct relationship between the sanction imposed and the conduct for which Darnell was sanctioned. Accordingly, we conclude the trial court did not abuse its discretion by imposing sanctions on Darnell for his conduct in both filing and re-refiling the third-party petition against Zimprich. Darnell's Issue One is overruled.

## CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

December 7, 2018

Before McClure, C.J., Rodriguez, and Palafox, JJ.